530 A.2d 293

Ioannis **KARABETIS** et al.

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE.**

**No. 1697, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Sept. 4, 1987.

408

Peter Prevas (Konstantine J. Prevas and Prevas & Prevas, on brief), Baltimore, for appellants.

John William Trotz, Asst. City Sol. (Benjamin L. Brown, City Sol., on brief), Baltimore, for appellee.

Argued before WILNER, ALPERT and ROBERT M. BELL, JJ.

ALPERT, Judge.

This case is about an alleged present day economic exploitation of laborers in a doughnut factory. The plight of workers has historically been manifested by two extremes: long working hours for low wages on the one hand, and rampant unemployment on the other. The apex was reached more than half a century ago during that era of economic despair known as the Great Depression. Competition for limited markets demanded that labor costs be cut. The result was substandard wages, rampant unemployment, and increased use of children as a cheap labor source.[1] Those tragically lean years gave birth, in 1938, to the Fair Labor Standards Act (FLSA).

FLSA created a national minimum wage, mandatory overtime pay, and rules concerning child labor for employees engaged in interstate commerce or in the production of goods for interstate commerce. The Congressional findings and declaration of policy stated:

(a) The Congress finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competi-

---

1. For a general history of the Fair Labor Standards Act, *see* 48A Am.Jur.2d *Labor and Labor Relations* § 2207 (1979). *See also* Kheel, 2 *Labor Law* § 48.02 (1986 and 1987 Supp.); Willis, *The Evolution of the Fair Labor Standards Act,* 26 U.Miami L.Rev. 607 (1972).

tion in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce. That Congress further finds that the employment of persons in domestic service in households affects commerce.

(b) It is declared to be the policy of this chapter, through the exercise by Congress of its power to regulate commerce among the several States and with foreign nations, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power.

29 U.S.C. § 202 (1982).

Some 28 years after enactment of FLSA, the Mayor and City Council of Baltimore found:

many persons employed in Baltimore are paid wages which, in relation to the cost of living in the City and the income necessary to sustain minimum standards of decent living conditions, are insufficient to provide adequate maintenance for themselves and their families; that the employment of such persons at such wages impairs the health, efficiency, and well-being of the persons so employed and of their families, reduces the purchasing power of such persons, diminishes and depresses business, trade, and industry in the City, threatens the stability and well-being of the City's economic life, fosters and contributes toward slum conditions and housing evils and creates conditions of want and deprivation tending to weaken and undermine family life and breed crime and juvenile delinquency.

Baltimore City Code, Art. 19, § 61 (1983). The City, therefore, enacted its own Wage Law.[2]

---

**2.** Although the two acts sought to accomplish similar goals, the city act is designed to cover all employees including those not covered by the federal (or state) act.

Violation of the City ordinance by appellants resulted in a judgment of $78,294.66 ($54,294.66 restitution and $24,000 in civil penalties) against them and spawned this appeal.

In October 1983, the Wage Commission for Baltimore City (the "Commission") began receiving complaints that Elrino Bakery, a general partnership, was not paying its employees overtime compensation in accordance with the Baltimore City Wage Law, Baltimore City Code, art. 19 § 61 *et seq.* (1983), which requires, *inter alia*, that employees be paid one and one-half times the usual hourly rate for all hours worked in excess of forty during a single work week. Subsequently, both the Wage Commission for Baltimore City and the Federal Wage and Hour Division of the United States Department of Labor began investigations to determine whether Elrino Bakery was paying overtime compensation. Upon learning of the federal investigation, the Baltimore City investigator "put his investigation on hold" while the federal investigation continued.

The federal investigator determined that Elrino Bakery had violated the FLSA provision requiring that employees be paid time and a half for overtime. 29 U.S.C. § 207(a)(1) (1983). Before instituting formal proceedings, the federal investigator offered a settlement of $26,000.00 to the owners of Elrino Bakery. The owners accepted the offer and promptly paid $26,000.00 in restitution. Elrino Bakery admitted to previous violations, but asserted that it had complied with the law since the federal investigation.

After the federal settlement, the federal investigator referred the case back to the Baltimore City Wage Commission, which reopened its investigation of the same time period covered by the federal investigation.[3] The city inves-

---

For state wage and hour protection, *see* Md.Ann.Code. art. 100, §§ 81–93A (1985 and 1986 Supp.).

**3.** The relevant testimony was as follows:
We got this case from the federal people. The investigator did not make a complete investigation. He estimated what was due. He had no concept they were going to pay it. They paid the full

tigator determined that the federal investigation was incomplete and cursory and that the violations discovered by the federal investigator were a mere "drop in the bucket." An administrative hearing was held on December 10, 1985, before the Baltimore City Wage Commission to determine whether Elrino Bakery owed overtime compensation to its employees pursuant to the Baltimore City Wage Law.

George Karabetis, part owner of the bakery, appeared before the Commission without benefit of counsel. He demonstrated some difficulty with the English language, causing the tribunal concern over whether there would be communication difficulties. Nevertheless, Karabetis acknowledged that he had not been paying time and a half to employees who worked overtime.

The Commission scheduled a second hearing for January 4, 1986. The owners of Elrino Bakery, appellants, did not attend the second hearing. The Commission issued an order requiring them to pay $54,294.66 in restitution and $24,000.00 in civil penalties.

Appellants failed to appeal this order to the Circuit Court for Baltimore City within the thirty day period required by the Baltimore City Wage Law. Baltimore City Code, art. 19 § 70(d) (1983). On April 24, 1986, appellees, the Mayor and City Council of Baltimore, filed a complaint in the Circuit Court for Baltimore City to enforce the administrative order of the Wage Commission for Baltimore City. When served with this complaint, Elrino Bakery retained an attorney to defend the enforcement action.

The Mayor and City Council of Baltimore filed a motion for summary judgment, which was heard by Judge Thomas Ward. Appellants opposed the motion for summary judgment, asserting that:

(1) the action of the Wage Commission for Baltimore City was pre-empted by the FLSA, thereby making the administrative order invalid and unenforceable;

---

amount, then came in here and said we don't know why we paid it. $26,000.

(2) Elrino Bakery could properly raise the validity of the administrative order sought to be enforced even though an appeal was not taken within the thirty (30) days provided by the Baltimore City Wage Law; and

(3) the facts in the record were insufficient to sustain a judgment in the enforcement action.

On November 14, 1986, Judge Ward signed an order granting the motion for summary judgment. Elrino Bakery filed a timely appeal to this court and presents the following questions:

I. Whether, in judicial proceedings to enforce an order of the Wage Commission for Baltimore City, Defendant[s], who had previously failed to appeal from such order within the thirty (30) days provided by local ordinance, were entitled to raise as a defense in the enforcement proceedings the issue of the validity of the order sought to be enforced?

II. Whether the jurisdiction of the Wage Commission for Baltimore City to issue an order to enforce the maximum hour provisions of the Baltimore City Wage Law, Baltimore City Code art. 19 § 61 et seq. (Repl.Vol.1983) was pre-empted by the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (1982) where both the Federal Act and the City Ordinance specify the same maximum hour provisions and where the employer in question was subject to the provisions of the Federal Fair Labor Standards Act?

III. Did the trial court err in granting plaintiff's motion for summary judgment where plaintiff had not proven all of the elements of its cause of action for enforcement of the Order of the Wage Commission for Baltimore City?

I. *Raising the Validity of the Commission's Order As a Defense in the Enforcement Proceeding*

■ Appellants contend that the trial court erred in granting appellee's motion for summary judgment. Specifi-

cally, appellants argue that, although they did not file a timely appeal from the order of the Wage Commission for Baltimore City, they were entitled to defend the enforcement action brought by Baltimore City by challenging the validity of the order sought to be enforced.

The Baltimore City Wage and Hour Law established a Wage Commission, Baltimore City Code, art. 19, § 62 (1983), and empowered that commission to take action to enforce the Baltimore Wage and Hour Laws, Baltimore City Code, art. 19, § 63 (1983). Once the Commission has resolved a case and issued a final order, the respondent may file an appeal to the Circuit Court for Baltimore City within 30 days. Baltimore City Code, art. 19, § 70(d) (1983). If the respondent files no appeal and fails to comply with the order, the Wage Commission "may certify such proceedings to the City Solicitor and request that he petition the Circuit Court for Baltimore City to enforce" the order. *Id.*

The Maryland "B" Rules govern appeals from administrative agencies of which the Wage and Hour Commission is one. Rule B1 dictates that "[t]his subtitle shall apply to the review of any final action of an administrative agency by a court where such review is specially authorized by statute...." Thus, the B rules are applicable to the case *sub judice*, since Baltimore City Code, art. 19, § 70(d) (1983) specifically authorizes appeal to the circuit court.

Rule B4(a) requires an order for appeal to be filed "within 30 days from the date of the action appealed from." If the appellant fails to file an appeal within 30 days, Rule B5 requires that "the court shall dismiss the appeal unless cause to the contrary can be shown." For cases construing this rule, *see Francois v. Albert Van & Storage Co., Inc.,* 285 Md. 663, 671-3, 404 A.2d 1058 (1979); *Border v. Grooms,* 267 Md. 100, 105-7, 297 A.2d 81 (1972); *Volk v. Pugatch,* 262 Md. 80, 83, 277 A.2d 17 (1971); *Warmack v. Bradley Club,* 242 Md. 394, 396-8, 219 A.2d 12 (1965); *Salisbury Board of Zoning Appeals v. Bounds,* 240 Md. 547, 214 A.2d 810 (1965); *Renehan v. Public Service Commission of Maryland,* 231 Md. 59, 63, 188 A.2d 566 (1963)

(applying the predecessor to the B Rules); *Levitz Furniture Co. v. Prince George's County,* 72 Md.App. 103, 527 A.2d 813, 815–17 (1987); *Matthew Bender & Co. v. Comptroller,* 67 Md.App. 693, 698–703, 509 A.2d 702 (1986).

In the case *sub judice,* appellant failed to file a timely appeal from the Commission's order. The Commission, pursuant to Baltimore City Code, art. 19, § 70(d), then filed an action to enforce the order. It is clear that the failure to file a timely appeal renders a judgment final even when the judgment of the lower tribunal was "wrong or rested on a legal principle subsequently overruled in another case." *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). *See also Epstein v. Chatham Park, Inc.,* 52 Del. 56, 153 A.2d 180, 185 (1959); *Petrus v. Robbins,* 196 Va. 322, 83 S.E.2d 408, 412 (1954). *See generally* 46 Am.Jur.2d *Judgments* § 461 (1969). As the Supreme Court explained:

> [A]n "erroneous conclusion" reached by the court in the first suit does not deprive the defendants in the second action "of their right to rely upon the plea of res judicata.... A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same [cause of action.]" We have observed that "[t]he indulgence of a contrary view would result in creating elements of uncertainty and confusion and in undermining the conclusive character of judgments, consequences which it was the very purpose of the doctrine of res judicata to avert."

*Federated Dept. Stores,* 452 U.S. at 398, 101 S.Ct. at 2428. The decision of an administrative agency "has the same effects under the rules of *res judicata,* subject to the same exceptions and qualifications, as a judgment of a court." [4]—

---

**4.** The *Restatement of Judgments* § 83(2) suggests the following elements must be present in order that the decision of an administrative agency have the same *res judicata* effect as a court:

*Restatement of Judgments* § 83(1) (1982). Further, objections or questions which were not raised in the administrative proceeding will not be considered on review by an appellate court. *Cicala v. Disability Review Bd. for Prince George's County,* 288 Md. 254, 418 A.2d 205 (1980); *Bulluck v. Pelham Woods Apartments,* 283 Md. 505, 390 A.2d 1119 (1978); *Tucker v. American Smelting and Re-*

---

(2) An adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication, including:

(a) Adequate notice to persons who are to be bound by the adjudication, as stated in § 2;

(b) The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties;

(c) A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status, or a specific series thereof;

(d) A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; and

(e) Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the parties to obtain evidence and formulate legal contentions.

(3) An adjudicative determination of a claim by an administrative tribunal does not preclude relitigation in another tribunal of the same or a related claim based on the same transaction if the scheme of remedies permits assertion of the second claim notwithstanding the adjudication of the first claim.

(4) An adjudicative determination of an issue by an administrative tribunal does not preclude relitigation of that issue in another tribunal if according preclusive effect to determination of the issue would be incompatible with a legislative policy that:

(a) The determination of the tribunal adjudicating the issue is not to be accorded conclusive effect in subsequent proceedings; or

(b) The tribunal in which the issue subsequently arises be free to make an independent determination of the issue in question. A review of the record indicates that the proceeding in the case *sub judice* entailed all the essential elements of adjudication. The Wage Commission has the power to issue subpoenas, Baltimore City Code, art 19, § 63(c) (1983), to compel witnesses and obtain documents, to issue an order, *Id.,* § 70(c), which will become final if no appeal is taken within 30 days after the order is entered. *Id.,* § 70(d). *See White v. Prince George's County,* 282 Md. 641, 658, 387 A.2d 260 (1978).

*fining Co.,* 189 Md. 250, 55 A.2d 692 (1947). Accordingly, appellant's failure (1) to raise the pre-emption defense during the administrative hearing and (2) to file a timely appeal of the administrative decision to the circuit court rendered the agency's decision final. Thus, appellant's pre-emption defense, unless considered jurisdictional, was barred by the doctrine of res judicata since it could have been raised before the administrative tribunal and on a timely administrative appeal. A challenge to the Commission's jurisdiction (*i.e.,* its power to hear the case) could, of course, be raised at any time. *McLean Constr. Co. v. Md. Transp. Auth.,* 70 Md.App. 514, 526, 521 A.2d 1251 (1987). *See also* discussion *infra.*

II. *Pre-emption and Jurisdiction of the Commission*

Appellants contend that "in the area of wage and hour regulation ... Congress intended to allow the states to exercise concurrent jurisdiction only when the state law or municipal ordinance provided for a higher minimum wage or lower maximum hour provision than the FLSA." Appellants note that both the Baltimore City Wage Law, Baltimore City Code art. 19, § 67 (1983), and the FLSA, 29 U.S.C. § 207(a)(1) (1982), dictate that employees be paid time and a half for all work over forty hours in a work week. Accordingly, appellants assert that the Wage Commission for Baltimore City had no jurisdiction over the case since the Baltimore City act "was pre-empted by the Federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (1982), where both the federal act and the city ordinance specify the same maximum hours provisions and where the employer ... was subject to the provisions" of the federal act.

*Jurisdiction*

At this point, we deem it necessary to examine the term "jurisdiction," for appellants argue that pre-emption deprives the City Wage Commission of its authority to hear the case. In *Stewart v. State,* 287 Md. 524, 413 A.2d 1337 (1980), the Court of Appeals said that "[j]uridically, jurisdiction refers to two quite distinct concepts: (i) the *power* of a

court to render a valid [final judgment], and (ii) the *proprie- ty* of granting the relief sought," 287 Md. at 526, quoting *Moore v. McAllister*, 216 Md. 497, 597, 141 A.2d 176 (1958) (emphasis in original). *See also First Federated Commodi- ty Trust v. Comm'r*, 272 Md. 329, 334, 322 A.2d 539 (1974); *Preissman v. City of Baltimore*, 64 Md.App. 552, 559, 497 A.2d 826 (1985). *See generally* 1 Pomeroy, *Equity Juris- prudence* §§ 129–31 (5th ed. 1941). Only when a court lacks the "fundamental jurisdiction to render the judgment" is there an absence of authority so as to render the judg- ment a nullity. *Stewart*, 287 Md. at 526, 413 A.2d 1337; *First Federated Commodity Trust*, 272 Md. at 334, 322 A.2d 539. *See also Pulley v. State*, 287 Md. 406, 412 A.2d 1244 (1980); *Parks v. State*, 287 Md. 11, 410 A.2d 597 (1980); *Block v. State*, 286 Md. 266, 270–3, 407 A.2d 320 (1979). The power of a court to hear and determine dis- putes is derived from applicable constitutional and statutory provisions. *Stewart*, 287 Md. at 527, 413 A.2d 1337. If,

> by that law which defines the authority of the court, a judicial body is given the *power* to render a judgment over the class of cases within which a particular one falls, then its action cannot be assailed for want of subject matter jurisdiction.

*Id.* (emphasis in original), quoting *First Federated Com- modity Trust*, 272 Md. at 335, 322 A.2d 539. Parties to a controversy cannot consent to or confer jurisdiction in its fundamental sense upon a court. *Stewart*, 287 Md. at 527, 413 A.2d 1337; *McLean Cont.*, 70 Md.App. at 526, 521 A.2d 1251. Moreover, the lack of fundamental jurisdiction may be raised at any time, including on appeal. *Id.*

 On the other hand, the propriety of granting the relief sought, as opposed to fundamental jurisdiction, merg- es into the final judgment and cannot be attacked once enrolled. *Id.* Thus, we must determine whether the Wage Commission had the fundamental power to hear the case *sub judice* as well as the propriety of their doing so.

■ We think it absolutely clear that the Wage Commission for Baltimore City had the fundamental power to hear and decide this case. Elrino Bakery is located in Baltimore City and is an employer within the meaning of the Baltimore City Wage Law. *See* Baltimore City Code, art. 19 § 64(2) (1983). The complaint against the bakery alleged, *inter alia*, that it had not paid its employees overtime for hours worked over forty hours per week, a violation of Baltimore City Code, art. 19 § 67 (1983). The Commission expressly has the power to investigate and hear all cases in which a violation of the Baltimore City Wage Laws is alleged.[5] Thus, we conclude that the Wage Commission did not exceed its fundamental jurisdiction when it investigated and heard this case.

Whether the constitutional issue of pre-emption is viewed as reaching the power of the court to hear the case or the propriety of the court in granting the relief sought, we are mindful of the premise that a reviewing court should ordinarily decline to analyze constitutional issues if the case may be resolved on any other grounds. *Brittingham v. State*, 306 Md. 654, 660, 511 A.2d 45 (1986); *Comm'r of Labor & Industry v. Fitzwater*, 280 Md. 14, 19, 371 A.2d 137 (1977); *Caplan Bros. v. Village of Cross Keys*, 277 Md. 41, 45–46, 353 A.2d 237 (1976); *Tauber v. Montgomery County*, 244 Md. 332, 337–8, 223 A.2d 615 (1966); *Middleman v. Maryland-National Capital Park and Planning Commission*, 232 Md. 285, 289, 192 A.2d 782 (1963); *Finke v. State*, 56 Md.App. 450, 482, 468 A.2d 353, *cert. denied*, 299 Md. 455, 474 A.2d 218 *cert. denied*, 469 U.S. 1043, 105 S.Ct. 529, 83 L.Ed.2d 416 (1984).

■ In the case *sub judice*, we need not and indeed therefore do not reach the constitutional issue of pre-emption since insufficient evidence was presented to generate the issue. We explain.

---

5. Baltimore City Code, art. 19, §§ 62, 63 and 70 (1983).

Although appellants assert that the Commission's jurisdiction was pre-empted by FLSA, appellant has not presented any evidence to demonstrate that FLSA applies to appellant. FLSA applies only to employees who are "engaged in commerce or in the production of goods for commerce," 29 U.S.C. § 206(a) (1982), or who are employed in an enterprise engaged in commerce or in the production of goods for commerce, *id.*, § 203(s)(1), within the meaning of FLSA.[6] If the employees of the bakery are not "engaged in commerce or in the production of goods for commerce" or employed by an enterprise doing the same, then FLSA is not applicable to the bakery and appellant's preemption argument must fail. *See Mitchell v. Vollmer & Co.*, 349 U.S. 427, 431, 75 S.Ct. 860, 863, 99 L.Ed. 1196 (1955); *Warren-Bradshaw Drilling Co. v. Hall*, 317 U.S. 88, 90, 63 S.Ct. 125, 126, 87 L.Ed. 83 (1942). *See also New Jersey v. Comfort Cab*, 118 N.J.Super. 162, 286 A.2d 742, 744 (1972).

In *Warren-Bradshaw, supra,* the Supreme Court considered the application of the Fair Labor Standards Act to employees working as members of a rotary drilling crew in the Panhandle oil field of Texas who were suing to recover, *inter alia,* unpaid overtime compensation. In analyzing the Fair Labor Standards Act, the court said:

The application of the Act depends upon the character of the employees' activities. *A.B. Kirschbaum Co. v. Walling,* supra (316 U.S. [517] p. 524, 86 L.Ed. 1638, 62 S.Ct. 1116 [p. 1120] ). The burden was therefore upon

---

6. 29 U.S.C. § 203(s)(1) dictates that an employer's business must satisfy a two-prong test before FLSA may be considered applicable. First, it must be shown that the business has an annual dollar volume which exceeds $250,000. Second, it must be demonstrated that the employees of the business "engaged in commerce, or handling, selling or otherwise working on materials that have been moved in or produced for commerce by any person." *Brock v. Commercial Index Bureau, Inc.*, 642 F.Supp. 1140, 1142 (D.Md.1986). *See also Marshall v. Victoria Transportation Co., Inc.*, 603 F.2d 1122 (5th Cir.1979); *Wirtz v. First State Abstract & Ins. Co.*, 362 F.2d 83 (8th Cir.1966); *Marshall v. Baker*, 500 F.Supp. 145 (N.D.N.Y.1980). *See generally,* T. Kheel, Labor Law § 48.03[2]–[3] (Matthew Bender, 1986); 48A Am. Jur.2d *Labor and Labor Relations* §§ 2273–2302 (1979).

respondents to prove that in the course of performing their services for petitioner and without regard to the nature of its business, they were, as its employees, engaged in the production of goods, within the meaning of the Act, and that such production was for interstate commerce.

317 U.S. at 90, 63 S.Ct. at 126. Applying that rule, the Supreme Court held that the employees presented sufficient evidence to sustain their burden since "[t]he evidence supports the finding that some of the oil produced ultimately found its way into interstate commerce." *Id.* at 91, 63 S.Ct. at 126–27.

The rule is, thus, clear. The burden of proving FSLA's applicability rests with the party who would assert it. *See Warren-Bradshaw*, 317 U.S. at 90, 63 S.Ct. at 126. *See also Noonan v. Fruco Constr. Co.*, 140 F.2d 633, 634 (8th Cir.1943); *Gilreath v. Daniel Funeral Home, Inc.*, 421 F.2d 504, 511 (8th Cir.1970); *Edwards v. Riverside Products Co.*, 85 F.Supp. 290, 293 (N.D.W.Va.1949); *Winslow v. National Electric Products Corp.*, 5 F.R.D. 126, 131 (W.D. Pa.1946); *Keen v. Mid-Continent Petroleum Corp.*, 63 F.Supp. 120, 132 (N.D.Iowa 1945); *Wagner v. American Service Co.*, 58 F.Supp. 32, 35 (S.D.Iowa 1944); *Timberlake v. Day & Zimmerman*, 49 F.Supp. 28, 31 (S.D.Iowa 1943); *Zehring v. Brown Materials*, 48 F.Supp. 740, 744 (S.D.Cal. 1943); *Samuels v. Houston*, 46 F.Supp. 364, 367 (S.D.Ga. 1942) and *Drake v. Hirsch*, 40 F.Supp. 290, 294 (N.D.Ga. 1941). In the more typical FLSA case, the burden is upon the employee (or the plaintiff suing on the employee's behalf) to establish that he is protected because in most cases it is the employee who seeks the benefit of the act. The *Warren-Bradshaw* progeny, however, clearly indicate that the party who seeks the benefit of the act has the burden of demonstrating its applicability. *See, e.g., Winslow*, 5 F.R.D. at 131; *Samuels*, 46 F.Supp. at 367.

In the case *sub judice*, appellants sought the protection of FLSA by asserting that FLSA pre-empts the City Wage Act, thus divesting the Baltimore City Wage Commission of

jurisdiction over the case. Appellants, however, presented no evidence, either during the Commission's hearing or by affidavit when attempting to defend the City's enforcement action, indicating that Elrino Bakery was engaged in commerce within the meaning of FLSA. No evidence was presented to suggest the annual dollar value of Elrino's business and, although evidence was undoubtedly available, no evidence was presented concerning the employees handling, selling or working on materials which have moved through interstate commerce. To the contrary, the only testimony admitted into evidence regarding where the bakery supplies its donuts indicated that the donuts were sold only within the State of Maryland.[7] While we note that the federal act may apply to circumstances like the facts before us, we hold that, in the case *sub judice*, insufficient evidence was presented to make that determination.

■ Accordingly, we hold that appellants' pre-emption argument must fail on evidentiary grounds. Since appellants never appealed the judgment, the propriety of the agency exercising jurisdiction merged into the final judgment and could not be attacked since it was enrolled. *See Stewart*, 287 Md. at 527, 413 A.2d 1337. For that reason, it was not improper for the Commission to exercise its jurisdiction to grant the requested relief.

■ Like FLSA, the Baltimore City Wage Law was designed to prevent the evils of unfair labor practices. *See* Baltimore City Code, Art. 60, § 61 (1983). If an employer seeks to avoid liability under the Baltimore City Wage Act on the theory that the act is pre-empted by FLSA, then the employer must meet his burden of proving that FLSA is

---

7. The pertinent testimony was as follows:
 SPEAKER: Who do they supply doughnuts to?
 SPEAKER: All the counties.

 . . . . .

 SPEAKER: I wanted to ask him who he supplies doughnuts to. I want to stay away from that place.
 SPEAKER: We had the same feeling.

applicable[8] (and must appeal the judgment in a timely manner). Although jurisdiction under FLSA is extensive, it cannot be presumed. There are many instances in which FLSA does not protect employees from unfair labor practices. *See* 29 U.S.C. § 213 (1982). In such instances, state and local laws provide employees with the *only* protection from unfair labor practices. Accordingly, a finding of

---

**8.** Similarly, if an employer seeks to avoid liability under state or local laws on the grounds that he has already settled with the federal government, then the employer must present the court with evidence that a settlement was in fact made as well as with whom it was made, and what were the material terms of the settlement. Section 16(c) of FLSA, 29 U.S.C. § 216(c) (1982), allows the federal government to supervise payment of unpaid overtime wages to an employee. Under this section, if an employee accepts payment pursuant to an agreement made with the federal government, then he has waived his right to pursue further compensation for unpaid overtime wages. *See Abbott v. Beatty Lumber Co.*, 90 Mich.App. 500, 282 N.W.2d 369, 371 (1979), citing *Sneed v. Sneed Shipbuilding, Inc.*, 545 F.2d 537 (5th Cir.1977). The federal government's power to supervise payment of unpaid overtime wages does not, however, extend to prevent judicial action from persons who were not compensated under the settlement agreement. Accordingly, if an employer wishes to defend an action for further overtime compensation on the basis that he has already settled the matter with the federal government, then he must demonstrate that the matter was in fact settled (*i.e.*, that the persons for whose benefit compensation is presently sought were compensated under the settlement with the federal government and that those employees released their right to bring further action as a term of the settlement). *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303 (7th Cir.1986). Where an employer fails to demonstrate that a settlement was made and that it covered the persons on whose behalf the local suit is brought, then the employer has failed to meet his burden of proof.

In the case *sub judice*, the record states that appellants entered into a settlement with the federal government for approximately $26,000. The record also states that the federal government then referred the matter to the Baltimore City Wage Commission for further investigation. Appellants did not, however, include a copy of the settlement agreement or any further evidence regarding the settlement agreement in the record. It is not clear on whose behalf the settlement with the federal government was made or whether the employees released appellants from further liability when they accepted payment. Thus, it is clear that appellants did not meet their burden of proof. Accordingly, appellants could not use the settlement as *res judicata* or to estop collaterally the suit of the Baltimore City Wage Commission.

pre-emption must be jealously guarded; and, if found at all, it must be predicated on a sound record. Where, as here, the record cannot support the constitutional challenge of pre-emption because it has not been shown that the federal act applies to the case at bar, it would be improper to consider the pre-emption issue. That issue, important as it is, must be saved for another day.

### III. *Summary Judgment*

Appellants' final argument is that the trial court erred in granting the Baltimore City Wage Commission's motion for summary judgment because the Commission "had not proven all of the elements of its cause of action for enforcement of the Order of the Wage Commission for Baltimore City."

 In their Response to Plaintiff's Motion for Summary Judgment, appellants alleged that:

[T]here is a genuine dispute as to the following material facts:

(A) That the names of the employees who were allegedly underpaid, their rates of pay, the dates of employment and hours worked are in dispute as they have not been alleged by the Plaintiff. These facts are material to entitle Plaintiff to judgment and summary judgment is inappropriate where Plaintiff has not proven any of the elements of its cause of action.

Thus, appellants contend that the element of "damages" has not been established because no exhibits showing individual wage claims were filed with the enforcement petition. Appellants' volley misses the mark completely. It is clear from the record that there is no *genuine* dispute of the *material* fact that the Commission's order required payment in the amount of $78,294.66. It is the fact of the very existence of the order itself that should be at issue in the enforcement proceeding, not the facts that entered into the decision giving rise to the order. Those latter facts, *i.e.*, the individual wage losses, were decided by the Commission and are *res judicata*. *See* discussion *supra* at pp. 416–

418. Thus, those facts are not material at the enforcement stage.

There is no genuine dispute of any *material* facts.

JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.