541 A.2d 648

Irene EVANS

v.

Robert J. EVANS.

No. 88, Sept. Term, 1988.

Court of Special Appeals of Maryland.

June 3, 1988.

Thomas F. Ellis, III, Annapolis, for appellant.

Margaret L. Demedis, Dunkirk, for appellee.

Argued before MOYLAN, WILNER and ALPERT, JJ.

ALPERT, Judge.

In this expedited appeal, we revisit the nagging problem of defining subject matter jurisdiction. On March 29, 1985, Judge Perry G. Bowen, Jr. of the Circuit Court for Calvert County signed an order for absolute divorce dissolving the marriage of Irene Evans (appellant) and Robert J. Evans (appellee). One provision of the order was "that Robert Evans is to forward to Irene Evans, the sum of $200.17 per month representing a one-half interest in a vested Air Force retirement plan." [1] No appeal was taken from this order.

In March of 1986, Irene Evans filed a petition to cite Robert Evans for contempt of court. Robert responded to the petition with the following answer on April 1, 1986:

By Order dated March 29, 1985, this Court ordered division of Air Force Disability payments. The amount ordered to Mrs. Evans was $200.17. The parties have subsequently learned that because this is an Air Force disability payment it is not divisible and not within the subject matter jurisdiction of this Court.

. . . . .

Because the Court lacks subject matter jurisdiction to award these funds, the prior Order is null and void.

A hearing was held on April 18, 1987 during which the disability pension and several other issues were discussed. Insofar as the disability pension was concerned, the judge noted:

My recollection is that [$200.17] was part of an entire scheme of dividing their property. And so it may well be that if it cannot be done or ought not to be done, then we might have to go back and restudy the whole arrangement that we made, because that was a part of it.

---

1. The parties now agree that Robert's pension was a military disability pension.

But in any event, the order is going to have to be obeyed until it is changed.

On August 11, 1987, Irene again filed a petition to cite Robert for contempt for his failure to remit to her the $200.17 a month from his military disability retirement pay. Robert responded on August 31, 1987 with an answer and a motion to amend or revise judgment which again raised the argument that the court lacked subject matter jurisdiction over the military disability pension.

A second hearing was held in September of 1987. In an oral opinion, the judge noted that under 10 U.S.C. § 1408(c)(1), military disability retirement pay is not marital property. He then held he had no jurisdiction to divide the military disability pension as marital property. He further ruled that a jurisdictional matter "can be dealt with at any time" and "that at any point when it is enforced, you can object to it." The judge subsequently signed an order granting the motion to amend or revise judgment, and deleted the provision of the previous order that Robert was to pay Irene $200.17 per month from his Air Force retirement plan.

Irene then noted this appeal, raising the following issue: did the trial judge have authority to revise the order *sub judice*? We hold that he did not.

Under the rules, a judgment may be revised "[o]n motion of any party filed 30 days after entry of judgment...." Md.Rule 2–535(a). After expiration of that 30 day period, a judgment becomes enrolled and the court may exercise revisory power and control over the judgment only in case of fraud, mistake or irregularity. Md. Rule 2–535(b); *see also Office of People's Counsel v. Advance Mobilehome Corp.*, 75 Md.App. 39, 540 A.2d 151 (1988).

■ This court has explained that "mistake" as it is used in Rule 2–535(b) is limited to a jurisdictional mistake. *Bernstein v. Kapneck*, 46 Md.App. 231, 239, 417 A.2d 456 (1980); *Hamilos v. Hamilos*, 52 Md.App. 488, 497, 450 A.2d 1316 (1982), *aff'd*, 297 Md. 99, 465 A.2d 445 (1983), *aff'd sub*

*nom, Johnston v. Johnston,* 297 Md. 48, 465 A.2d 436 (1983). Thus, the parties concede the trial judge could revise the judgment only if the erroneous categorization of a military disability pension as marital property was a jurisdictional mistake. We hold that the mistake was not jurisdictional.

Appellee, relying on the Supreme Court case of *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), contends that the award of the military disability pension was a jurisdictional error that rendered that portion of the divorce decree null and void. Appellant asserts, however, that the error was simply a legal mistake that could not be elevated to a jurisdictional question.

In order to explain clearly our decision, we must examine *McCarty,* its background, its past and its present. In 1981, the Supreme Court of the United States held that military retirement pay could not be considered community property upon the dissolution of a marriage. *See McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728.[2] The Court reasoned that "it is manifest that the application of community property principles to military retired pay threatens grave harm to 'clear and substantial' federal interests." *Id.* at 232, 101 S.Ct. at 2741 (*citing United States v. Yazell,* 382 U.S. 341, 352, 86 S.Ct. 500, 507 (1966)). The Court explained that the application of community property laws to military pensions would "diminish that portion of the benefit Congress has said should go to the retired [service member] alone." *Id.* 453 U.S. at 233, 101 S.Ct. at 2741. The Court also feared that enforcement of the community property law would create "[t]he potential for disruption of military personnel management" because it would decrease the attractiveness

---

**2.** The Court of Appeals of Maryland subsequently held in *Hill v. Hill,* 291 Md. 615, 436 A.2d 67 (1981), that the rationale of *McCarty* applied with equal force to "a division of property" in an equitable distribution state such as Maryland. Thus, the *Hill* court held that a military pension could not be considered marital property. The *Hill* court did not consider "[T]he question whether federal law precludes the division of veteran's disability benefits...." *Id.* at 621, 436 A.2d 67.

of the military retirement system which "is designed to serve as an inducement for enlistment and re-enlistment, to create an orderly career path and to ensure 'youthful and vigorous' military forces." *Id.* at 234, 101 S.Ct. at 2742. While the Court recognized the plight of an ex-spouse of a retired service member, the Court held that the protection of those former spouses should be left to Congress. *Id.* at 235–36, 101 S.Ct. at 2742–43. Federal law as it existed at that time, the Court held, did not permit a state to classify a military pension as community property.

In response to *McCarty,* Congress enacted in September of 1982 the "Uniform Services Former Spouses' Protection Act." Pub.L. No. 97–252, § 1001–1002, codified at 10 U.S. C. § 1408 (September 8, 1982).[3] Senator Jeremiah Denton explained the need for the USFSPA this way:

> Those wives who have loved and served as wives and mothers for many years deserve more than mere recognition. They are entitled to a degree of security.

S.Rep. No. 97–502 on Title X of Pub.L. 97–252, 97th Cong., 2d Sess. 43, *reprinted in* 1982 U.S.Code Cong. & Ad.News 1626. The statute permitted a court, under certain circumstances, to treat "disposable retired or retainer pay" either as "property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c)(1). The statute, however, specifically excepted from the term "disposable retired or retainer pay" money paid as disability retirement pay under Chapter 61 of Title 10. *See* 10 U.S.C. § 1408(a)(4) (1982).

The exemption of military disability pensions from the states' marital and community property laws was limited

---

**3.** The legislative history of 10 U.S.C. § 1408 specifically states:
> The primary purpose of the bill is to remove the effect of the United States Supreme Court decision in *McCarty v. McCarty,* 453 U.S. 210 [101 S.Ct. 2728, 69 L.Ed.2d 589] (1981).
> S.Rep. No. 97–502 on Title X of Pub.L. 97–252, 97th Cong., 2d session, reprinted in 1982 U.S.Code Cong. & Ad.News 1555, 1596.

somewhat in 1986.[4]  On November 14, 1986, Congress amended 10 U.S.C. § 1408 to provide:

(4) "Disposable retired or retainer pay" means the total monthly retired or retainer pay to which a member is entitled less amounts which—

\*     \*     \*     \*     \*     \*

(E) in the case of a member entitled to retired pay under chapter 61 of this title [disability retirement pay], are equal to the amount of retired pay of the member under that chapter computed using the percentage of the member's disability on the date when the member was retired (or the date on which the member's name was placed on the temporary disability retired list)[.]

10 U.S.C. § 1408(a)(4)(E).  This amendment limits the exemption of military disability retirement pay from marital property laws in an amount related to the retired person's percentage of disability on the date of retirement.

It is clear under 10 U.S.C. § 1408 that classification of a military disability pension as marital property is in error.[5]  The question that we must decide is whether the alleged error was one of subject matter jurisdiction, in which case the subject order could be void, or if the error was one of law, in which case the order would merely be voidable.  As explained in *Freeman on Judgments:*

The legitimate province of collateral impeachment is void judgments.  There and there alone can it meet with any measure of success.  Decision after decision bears this import: In every case the field of collateral inquiry is narrowed down to the single issue concerning the void

---

**4.**  The original order of the trial judge which supposedly classified the military disability pension as marital property was issued in March of 1985.  The trial judge granted the motion to amend or revise judgment in September of 1987.

**5.**  Appellant claims the judge did not award the disability pension as marital property but rather simply ordered a monetary payment "to adjust the parties' equity in marital property."  Inasmuch as we hold that the trial judge was not empowered to revise the judgment whether there was error or not, we need not reach this issue.

character of the judgment and the assailant is called upon to satisfy the court that such is the fact. To compass his purpose of overthrowing the judgment, it is not enough that he show a mistaken or erroneous decision or a record disclosing nonjurisdictional irregularities in the proceedings leading up to the judgment. He must go beyond this and show to the court, generally from the face of the record itself, that the judgment complained of is utterly void. If he can do that his attack will succeed for the cases leave no doubt respecting the right of a litigant to collaterally impeach a judgment that he can prove to be void.

A.C. Freeman, 1 *Freeman on Judgments,* § 322 at 642 (5th ed. 1925) (footnotes omitted). As *Freeman* explains, collateral attack cannot successfully affect an enrolled judgment that is merely voidable rather than void. The rationale for this rule was explained:

The law provides adequate remedies for obtaining direct relief from erroneous or irregular decisions. It is not the policy of the law to permit a party to such judgments to stand idly by without availing himself of the opportunity given him to repair the mistakes and missteps of a court acting within its jurisdiction although in an erroneous manner and to reserve his objections for litigation in a collateral proceeding.

1 *Freeman on Judgments,* § 322 at 645.

The *Restatement of the Law of Judgments* explains how to reconcile the court's traditional interest in finality and collateral attacks for lack of subject matter jurisdiction:

§ 12.   Contesting Subject Matter Jurisdiction

When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if:

(1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or

(2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or

(3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

Restatement (Second) of Judgments, § 12 (1982).

■ Recently, in *Karabetis v. City of Baltimore*, 72 Md.App. 407, 530 A.2d 293 (1987), we summarized Maryland law on the subject: "Only when a court lacks the 'fundamental jurisdiction to render the judgment' is there an absence of authority so as to render the judgment a nullity." *Id.* at 419, 530 A.2d 293 (citing *Stewart v. State*, 287 Md. 524, 526, 413 A.2d 1337 (1980)). Drawing the line between one kind of mistake and the other often is not an easy task. As the Court of Appeals noted: "[w]hat is meant by the lack of jurisdiction in its fundamental sense such as to make an otherwise valid decree void is often misunderstood." *First Federated Commodity Trust Corp. v. Commissioner*, 272 Md. 329, 334, 322 A.2d 539 (1974). The *First Federated* court cited an earlier Court of Appeals case to explain:

"Juridically, jurisdiction refers to two quite distinct concepts: (i) the *power* of a court to render a valid decree, and (ii) the *propriety* of granting the relief sought. 1 *Pomeroy, Equity Jurisprudence* (5th ed. 1941), Secs. 129–31."

*First Federated* at 334, 322 A.2d 539 (citing *Moore v. McAllister*, 216 Md. 497, 507, 141 A.2d 176 (1958)) (emphasis in original).

To ascertain whether a court has power, it is necessary to consult the Constitution of the State and the applicable statutes. These usually concern two aspects: (a) jurisdiction over the person—obtained by proper service of pro-

cess—and (b) jurisdiction over the subject matter—the cause of action and the relief sought.

*Moore,* 216 Md. at 507, 141 A.2d 176. A challenge for lack of subject matter jurisdiction may be raised at any time. *Karabetis,* 72 Md.App. at 418, 530 A.2d 293. Conversely, "[t]he propriety of granting the relief sought, as opposed to fundamental jurisdiction, merges into the final judgment and cannot be attacked once enrolled." *Id.* at 419, 530 A.2d 293.

The judge's error, if any, in awarding Irene a one-half interest in Robert's military disability pension was an error of law and not of jurisdiction. The judge had the *power* to make the award of marital property; it is the propriety of a portion of his award that Robert seeks to challenge by collateral attack. We agree with the following explanation of the law by the Supreme Court of Missouri:

[W]here the Constitution or a statute authorizes a court to do a particular thing, and the power of the court to act is subject to certain limitations named, then a judgment of the court rendered contrary to the limitations named is not void for want of jurisdiction nor subject to collateral attack, but is voidable only.

*Sullinger v. West,* 211 S.W. 65, 67 (1919).

This result is supported by cases in federal district and circuit courts that refused to apply *McCarty* retroactively to invalidate existing marital awards of military pensions. *See, e.g., In re Chandler,* 805 F.2d 555 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 2180, 95 L.Ed.2d 837 (1987); *Armstrong v. Armstrong,* 696 F.2d 1237 (9th Cir.1983), *cert. denied,* 464 U.S. 933, 104 S.Ct. 337, 78 L.Ed.2d 306 (1983); *Brown v. Robertson,* 606 F.Supp. 494 (W.D.Tex. 1985); *Allcock v. Allcock,* 107 Ill.App.3d 150, 62 Ill.Dec. 865, 437 N.E.2d 392 (1982). Those courts uniformly rejected claims by the retired service members that under *McCarty* courts that had awarded military pensions as marital property had exceeded their authority. Thus, those courts refused to find the awards were void *ab initio,* and they held the service members could not collaterally attack the

judgments. In *Erspan v. Badgett*, 659 F.2d 26, the Fifth Circuit explained:

> Unlike both *McCarty* and *Hisquierdo* [*v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) ], however, which were direct appeals from state court divorce decrees, the case *sub judice* is not: there is no divorce decree before this Court. Moreover, notwithstanding defendant's invitation for this Court to 'reverse' the February 21, 1963 judgment of the 65th Judicial District Court of El Paso County, Texas, we have no such jurisdiction. Defendant advances no reason why that judgment should be denied its usual *res judicata* effect, and none is readily apparent; as a final judgment, it settles not only the issues actually litigated, but also any issues that *could* have been litigated in that proceeding. *Federated Department Stores, Inc. v. Moitie*, [452] U.S. [394], 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981). Furthermore, as the Supreme Court noted in *Federated Department Stores*, 'the res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.' [452 U.S. at 398], 101 S.Ct. 2427 (citations omitted). Nothing in *McCarty* suggests that the Supreme Court therein intended to invalidate, or otherwise render unenforceable, prior valid and subsisting state court judgments. Absent some indication of such an intent, we decline to do so.

*Erspan v. Badgett*, 659 F.2d 26, 28 (5th Cir.1981) (footnotes omitted), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). Similarly, in *In Re Marriage of Smith*, the United States Court for the Western District of Texas refused to apply *McCarty* retroactively, and held:

> The Smith divorce decree is a final, unappealed judgment on the merits. This Court has no power to alter the terms of the divorce decree even if, as Mr. Smith asserts, the divorce decree's division of his military disability

retirement pay was wrong or overruled by subsequent law.

549 F.Supp. 761, 767 (W.D.Tex.1982).

The Supreme Court itself effectively ruled that state court judgments already existing when *McCarty* was issued were not void for lack of subject matter jurisdiction. In the California case *In re Marriage of Sheldon,* 124 Cal.App.3d 371, 177 Cal.Rptr. 380 (1981), the California Court of Appeals held that *McCarty* did not apply retroactively to cases not final on appeal if the parties had not raised the federal preemption issue. The aggrieved exservice member then filed an appeal to the Supreme Court of the United States raising, *inter alia,* the following issue:

Does federal preemption of state community property laws regarding division of military retirement pay render state judgments void for lack of subject matter jurisdiction where such judgments were entered after Congress had preempted area of law?

50 U.S.L.W. 3869. The Supreme Court dismissed the appeal in *Sheldon v. Sheldon,* 456 U.S. 941, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982) "for want of substantial federal question." As explained by the Ninth Circuit, "[a] summary dismissal by the Supreme Court of an appeal from a state court for want of a substantial federal question operates as a decision on the merits on the challenges presented in the statement of jurisdiction." *White v. White,* 731 F.2d 1440, 1443 (9th Cir.1984) (citing *Carpenters Pension Trust v. Kronschnabel,* 632 F.2d 745, 747 (9th Cir.1980), *cert. denied,* 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981)). *See also Armstrong v. Armstrong,* 696 F.2d 1237, 1238 (9th Cir.1983).

Although we recognize that *Erspan, Smith, Sheldon* and the other cases cited concerned the retroactive application of *McCarty* to already existing marital awards, we believe their rationale is applicable to the case at bar. As were the courts deciding those cases, we too are faced with an award of a military pension that was impermissible under existing federal law; and also as were those courts, we are faced

with a collateral challenge to the erroneous award of a military pension. Similarly, we conclude that the award of a military disability pension was not made without subject matter jurisdiction, and thus it could not be collaterally challenged a year after it was entered. *Cf. Steel v. U.S.,* 813 F.2d 1545, 1548 (9th Cir.1987) (The new act "does not create [subject-matter] jurisdiction, but grants power to courts once they have jurisdiction."). Appellee's recourse to the allegedly erroneous award should have been a timely appeal. His failure to do so prevents him from raising the issue now.

JUDGMENT REVERSED; ORIGINAL ORDER OF MARCH 29, 1985 REINSTATED. APPELLEE TO PAY THE COSTS.