*Motor Vehicle Administration, et al. v. Karl Geppert*
No. 61, September Term 2019


**Appeals – Administrative Procedure Act – Transfers Between Appellate Courts – Cases Arising Under Maryland Vehicle Law**. An appeal of a circuit court decision in an action brought under the State Administrative Procedure Act ordinarily is an appeal of right to the Court of Special Appeals. However, if the case arose under Title 16 of the Maryland Vehicle Law, the appeal is by a petition for a writ of *certiorari* to the Court of Appeals. If a litigant incorrectly files a notice of appeal to the Court of Special Appeals, that court should transfer the case to the Court of Appeals under Maryland Rule 8-132 to be treated as a petition for a writ of *certiorari*.
Maryland Code, State Government Article, §10-223; Transportation Article, §16-101 *et seq*.; Maryland Rule 8-132.


**Administrative Procedure Act** – **Judicial Enforcement Action – Final Administrative Decision.** A party who has prevailed at an administrative hearing under the State Administrative Procedure Act may bring an action in a circuit court pursuant to State Government Article, §10-222.1 and request a writ of mandamus to enforce that decision. The circuit court is bound by any fact findings made as part of the administrative decision that were not reversed in any prior judicial review of the administrative decision. However, to obtain a writ of mandamus, a plaintiff must still show a "clear legal right" to the relief sought. An erroneous legal holding by the administrative decision maker is not binding on the circuit court.
Maryland Code, State Government Article, §10-222.1.

Circuit Court for Baltimore County
Case No. 03-C-15-003363
Argument: March 9, 2020

IN THE COURT OF APPEALS
OF MARYLAND

No. 61

September Term, 2019

_____

MOTOR VEHICLE ADMINISTRATION, ET AL.

V.

KARL GEPPERT

_____

Barbera, C.J.,
McDonald
Hotten
Getty
Booth
Biran
Battaglia, Lynne A.
(Senior Judge, Specially
Assigned),

JJ.

_____

Opinion by McDonald, J.

_____

Filed: July 27, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

This appeal poses the question whether a court must enforce a final administrative decision of an executive branch agency when the losing party previously failed to seek judicial review of that decision, even if the relief granted by that decision violates a statute that specifically prohibits the agency from taking the action required by the administrative decision.

A State statute requires, as a condition for obtaining a Maryland driver's license, that an applicant provide the Motor Vehicle Administration ("MVA") with the applicant's social security number, or proof that the applicant is ineligible for a social security number. A second statute explicitly bars the MVA from issuing a license to an applicant who fails to satisfy that requirement.

This case began when Respondent Karl Geppert, who does not have a social security number but is eligible for one, applied for a learner's permit (an initial step toward a driver's license). Petitioner MVA denied Mr. Geppert's application because he failed to satisfy the statutory requirement related to providing a social security number. However, the MVA's computer application form, which reflected an earlier, repealed regulation that preceded the applicable statutes, effectively inquired only whether an applicant had a social security number, but not whether the applicant was eligible for one. Mr. Geppert had accurately responded only that he did not have a social security number, without certifying anything as to his eligibility for obtaining one. Mr. Geppert requested a hearing to contest the MVA's denial of his application.

The MVA has delegated the conduct of hearings and the authority to render a final administrative decision on its behalf to administrative law judges ("ALJ"s) in the Office of Administrative Hearings. At the hearing in Mr. Geppert's case, the ALJ concluded

that Mr. Geppert had not complied with the statutory requirement to provide a social security number. However, the ALJ ordered that a learner's permit be issued to him, apparently based on the ALJ's belief that the repealed regulation, on which the computer application was based, was still in effect and trumped the statutes. The MVA did not seek judicial review of the ALJ's final administrative decision.

Mr. Geppert brought a judicial enforcement action under the State Administrative Procedure Act ("APA") and requested a writ of mandamus to enforce the ALJ's ruling. The Circuit Court concluded that the ALJ's decision was based on an incorrect legal premise and held that Mr. Geppert did not have a "clear legal right" to the relief he requested. On appeal, the Court of Special Appeals reversed, holding that the Circuit Court was barred from considering the legal soundness of the ALJ's decision.

In our view, a circuit court asked to enforce an administrative order based on a final administrative decision under the APA is not precluded from considering whether the relief ordered would violate the law on which the administrative decision is based. Accordingly, we reverse the decision of the Court of Special Appeals.

# I

## Legal Background

### A. *Obtaining a Driver's License in Maryland*

*The Maryland Vehicle Law*

The Maryland Vehicle Law is part of the Transportation Article ("TR") of the Maryland Code and is administered by the MVA.[1] Pertinent to this case, the General

---

[1] The Maryland Vehicle Law consists of titles 11 through 27 of the Transportation Article. TR §11-206.

Assembly has directed the MVA, in administering that law, to "examine and determine the legality of each application made to it under the Maryland Vehicle Law" and to reject an application, if not satisfied as to its legality. TR §12-106. The MVA is authorized to adopt regulations and create necessary forms to carry out that law. TR §§12-104(b), 12-105. The regulations that the agency has adopted for implementing the Maryland Vehicle Law are codified in Subtitles 11 through 23 of Title 11 of the Code of Maryland Regulations (COMAR).

*Regulating Drivers*

The authority to operate a motor vehicle on a public road in Maryland is governed by Title 16 of the Maryland Vehicle Law. To do so legally, an individual must either (1) have a Maryland driver's license issued pursuant to Title 16; (2) be expressly exempted in Title 16 from the licensing requirement;[2] or (3) be otherwise specifically authorized by Title 16 to drive a specific class of vehicle.[3] TR §16-101(a). This case concerns one of the requirements for satisfying the first of these alternatives under Title 16 – obtaining a Maryland driver's license.

An individual can begin the process for obtaining a Maryland driver's license, upon reaching the age of 15 years and nine months, by applying for a learner's instructional

---

[2] The exemptions from the licensing requirement are set forth in TR §16-102. An example is an out-of-state resident who is licensed to drive by the state of residence and who meets certain criteria. TR §16-102(a)(9).

[3] An example of an individual specifically authorized by Title 16 to drive a specific class of vehicle without a Maryland driver's license is a driver of a commercial motor vehicle who holds a commercial driver's license from another state and meets certain criteria. TR §16-809.

permit as a precursor to a driver's license.[4]  TR §§16-103(c)(1), 16-105.  To do so, the applicant must complete an application for a driver's license provided by the MVA that asks for information required by the relevant provisions of Title 16, pass a vision test, and pay the requisite fee.  TR §§16-105(a), 16-106, 16-110.  As a prerequisite to obtaining a learner's permit, the applicant must also take an exam administered at an MVA office.  TR §16-110; COMAR 11.17.05.09.   Upon reaching the age of 16 years and six months and meeting certain criteria, a holder of a learner's permit may obtain a provisional license.  TR §§16-103(c)(2), 16-111.

*Applications for Licenses and the SSN Requirement*

The information that an applicant must provide in an application for a driver's license – and for a learner's permit en route to a license – is specified in TR §16-106 and related regulations.  For example, the applicant must provide the applicant's full name and address, certain demographic information (race, sex, height, weight, general physical condition, date of birth), proof of age and identity, and information about prior licenses held or applied for.  Pertinent to this case, an applicant must also provide:

> (1)  Satisfactory documentary evidence that the applicant has a valid Social Security number by presenting the applicant's Social Security Administration account card or, if the Social Security Administration account card is not available [any of several specified documents bearing the Social Security number]; or
>
> (2)  Satisfactory documentary evidence that the applicant is not eligible for a Social Security number.

---

[4] A learner's permit falls within the general rubric of a license under the Maryland Vehicle Law.  TR §11-128(a)(2)(ii).

4

TR §16-106(c).  We shall refer to this condition for obtaining a license as the "SSN requirement."[5]

In addition to *requiring an applicant* to take certain affirmative steps – such as satisfying the SSN requirement – to obtain a driver's license, the Maryland Vehicle Law *expressly prohibits the MVA* from issuing a driver's license, or a learner's permit en route to a license, if the applicant fails to qualify for the license for a number of enumerated

---

[5] An applicant for a Maryland driver's license has been required to provide the applicant's social security number as part of the application for several decades, although the precise requirement has changed over the years in response to two federal laws.  In 1988, the MVA first adopted a regulation requiring disclosure of an applicant's social security number *or* a certification that the applicant did not have a social security number. 15:5 Md. Reg. 622 (Feb. 26, 1988) (Final Action adopting COMAR 11.17.02.02).

In 2003, to ensure that the State continued to qualify for funding under a federal law that required states to collect social security numbers in connection with licensing for the purpose of enforcing child support obligations, the General Assembly incorporated that requirement in statute.  Chapter 452, Laws of Maryland 2003; *see also* 42 U.S.C. §666(a)(13); TR §16-203 (providing for suspension of a driver's license of one who is delinquent on child support obligations).

Two years later, the federal REAL ID Act of 2005 was enacted, requiring a state to collect information concerning an applicant's social security number in order for a driver's license to be adequate identification to enter a federal building or to board an airplane. Pub.L. 109-13, title II, §202(c), 119 Stat. 312-13.  To allow Maryland licenses to comply with the REAL ID Act, the General Assembly amended Maryland law to require a license applicant to provide a valid social security number or proof that the applicant was ineligible for a social security number – what we refer to in this opinion as the SSN requirement. Chapter 390, §2, Laws of Maryland 2009.  As explained later in the text of this opinion, the MVA immediately adopted a regulation to reflect the SSN requirement based on the REAL ID Act, but did not repeal the prior regulation for a couple of years.  The SSN requirement is essentially unchanged since 2009.

Maryland law allows for the issuance of driver's licenses that are not compliant with the REAL ID Act and SSN requirement, but only for applicants who cannot prove lawful status in the United States.  TR §16-122(a).  This second tier driver's license does not pertain to this case as there is no dispute that Mr. Geppert is a United States citizen.

reasons. TR §16-103.1. Among those reasons is an applicant's failure to satisfy the SSN requirement. TR §16-103.1(11). That provision states that the MVA "may not issue a driver's license to an individual … who does not [satisfy the SSN requirement]," in language essentially identical to that of TR §16-106(c) quoted above. In the Maryland Code, the verb phrase "may not" is defined to have "a mandatory negative effect and establishes a prohibition." Maryland Code, General Provisions Article, §1-203. TR §16-103.1(11) thus bars the agency from issuing a license to one who fails to satisfy the SSN requirement.

## B.  *Administrative Hearings under the Maryland Vehicle Law*

Title 16 of the Maryland Vehicle Law provides for an administrative hearing in certain circumstances where the MVA refuses to issue or renew a driver's license, suspends a license, or revokes a license. TR §16-206. The MVA is to provide such a hearing pursuant to the hearing provisions of the Maryland Vehicle Law. *See* TR §12-201 *et seq*.[6] That statute generally requires the MVA to provide notice and a prompt hearing following a request for one. TR §12-203. The hearings are to be conducted in accordance with the contested case procedures set forth in the APA, Maryland Code, State Government Article ("SG"), §10-201 *et seq*. With respect to hearings concerning driver's licenses, the MVA is to render a decision within 30 days of the hearing. TR §12-203(b)(3).

---

[6] In some instances, the Maryland Vehicle Law limits the issues that can be raised during the hearing. *See, e.g.*, TR §16-205.1(f)(7)(i), §16-206(d)(3).

6

As permitted by statute, the MVA has, by regulation, delegated to the Office of Administrative Hearings the authority to conduct hearings on the MVA's behalf under the Maryland Vehicle Law, including hearings concerning driver's licenses. *See* TR §12-104(e); COMAR 11.11.02.07. That delegation authorizes the ALJ who conducts the hearing to issue a final decision and order on behalf of the MVA. COMAR 11.11.02.07A.

Once an ALJ has issued a final decision on behalf of the MVA, judicial review of that decision is available in a circuit court pursuant to the judicial review provision of the APA and the Maryland Rules. TR §12-209(b); SG §10-222; Maryland Rule 7-201 *et seq*. A party may also seek enforcement of an administrative order under the APA by filing an action in the circuit court in which the party requests declaratory or injunctive relief, or a writ of mandamus. SG §10-222.1.

For most actions brought under the APA, an appeal from a circuit court decision ordinarily takes the usual route to the Court of Special Appeals. SG §10-223. However, there is an exception for cases arising under Title 16 of the Maryland Vehicle Law. SG §10-223(a)(1). In cases subject to that exception, any further review is not in the Court of Special Appeals, but rather by a petition for a writ of *certiorari* in this Court. Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §12-305. As we shall see, the route of appeal from a circuit court decision in an enforcement action brought under SG §10-222.1 that arises under Title 16 of the Maryland Vehicle Law is a matter of debate in this case.

7

## II

## Facts and Proceedings

The basic facts and procedural path of this case are undisputed.[7]

### A.    *Mr. Geppert Applies for a Learner's Permit*

During 2012, Mr. Geppert reached the age of 15 years and nine months and, like most teenagers his age, sought to obtain a learner's permit as a prerequisite to obtaining a driver's license. He apparently made multiple attempts to obtain a learner's permit from the MVA beginning in March 2012. However, those efforts proved unsuccessful as Mr. Geppert did not have a social security number.[8]

This case is based on an attempt Mr. Geppert made on November 6, 2013, when he went to the MVA office in Glen Burnie to complete the license application and to take the required exam. To complete the application, Mr. Geppert responded to a computer form that asked him, among other things, to certify "that I do not have or I am not eligible for a social security number." As is evident from the discussion in the previous section of this

---

[7] In presenting the relevant materials to us, the parties have distributed them over four separate appendices and a copy of the record extract that was filed in the intermediate appellate court. This suggests that there may have been a lack of cooperation between counsel. We will not attempt to assign blame for this situation and, in any event, we have reviewed the original record for purposes of this opinion. We simply note that future litigants will earn the undying appreciation of an appellate court if they can successfully consolidate relevant materials from the record in an agreed-upon record extract, as encouraged by Maryland Rule 8-501.

[8] It appears from the record that Mr. Geppert has never applied for a social security number; nor did his parents apply for a social security number for him. It appears to be a matter of principle for the Gepperts. In an email to one of his son's former counsel that appears in the record, Mr. Geppert's father stated that "We have planned and been in this fight for 17 yrs. We are not giving up the fight."

opinion, that question was inconsistent with the SSN requirement in TR §16-103(c) and TR §16-103.1(11), as it did not require an applicant who lacked a social security number to certify that he or she was ineligible to have one. To be consistent with the governing statutes, the application should have asked an applicant to certify "that I do not have *and* I am not eligible for a [social security number]."[9] In any event, Mr. Geppert checked the box next to the existing question on the computer form, which effectively certified only that he did not have a social security number, but was ambiguous as to his eligibility for one.

The MVA promptly denied Mr. Geppert's application at the time he made it in the Glen Burnie office. The agency immediately provided him with a form letter stating that it could not process his application because he had failed to satisfy the SSN requirement. The form letter recited that he had the right to request a hearing within 15 days.[10]

---

[9] The MVA later corrected this part of the computer application form to substitute the conjunction "and" for the conjunction "or." *See* footnote 19 below.

[10] We note in passing that it is not entirely clear on what basis Mr. Geppert was entitled to a hearing. The provision cited in the denial letter – TR §12-203 – does not itself grant a right to hearing, but rather governs the notice and timing of hearings when "*the Maryland Vehicle Law or a rule or regulation of the [MVA] provides* that an applicant or licensee may request a hearing on refusal, suspension, or revocation of a license or privilege." (emphasis added). Various sections in the Maryland Vehicle Law provide for a hearing when a license is suspended, revoked, or refused. An applicant who is refused a license has a right to a hearing in six circumstances enumerated in TR §16-206(a)(1). TR §16-206(d)(1) (right to a hearing if applicant is refused a license for reasons set forth in TR §16-206(a)(1)). None of those provisions pertains to Mr. Geppert's situation.

In this case, the statute on which the denial was based, TR §16-103.1(11), simply states that the MVA may not issue a driver's license to an individual "[w]ho does not provide . . . a valid Social Security number . . . or [s]atisfactory documentary evidence that the applicant is not eligible for a Social Security number." No provision is made for an administrative hearing in that statute if an applicant is refused a license for failure to

9

## B.   *The Administrative Hearing*

Mr. Geppert's father made a timely request through counsel[11] for a hearing on the denial of Mr. Geppert's November 2013 application. The hearing was held on April 1, 2014.[12] At the hearing, the ALJ reviewed documents submitted by the MVA, which did not otherwise appear at the hearing. Mr. Geppert appeared at the hearing with his father.[13]

---

comply with that requirement. This Court has previously held that a license applicant is not entitled to an administrative hearing when the MVA denies the application pursuant to another subsection of TR §16-103.1 that bars the MVA from issuing a license to one whose license to drive is revoked, suspended, refused, or cancelled in another state. *Headen v. MVA*, 418 Md. 559 (2011). In that case, the Court observed that TR §16-103.1 itself does not grant the right to a hearing, nor did any other provision of the Maryland Vehicle Law or regulations. 418 Md. at 580-83.

We are not aware of any statute or regulation that provides a right to a hearing for an applicant who fails to satisfy the SSN requirement. It is notable that the transmittal to the Office of Administrative Hearings for the hearing listed the case type as "cancellation" and some of the citations related to circumstances in which a license is refused because the applicant made a false statement in the application – a circumstance, though not applicable to Mr. Geppert, that *would* entitle the applicant to a hearing in some circumstances under TR §16-206(a)(1)(vi) and which caused the ALJ some initial confusion as to the nature of the hearing she was supposed to conduct.

In the end, the fact that the MVA may have provided Mr. Geppert with more process than he was due is not a reason for disregarding the ALJ's decision – and the MVA appropriately has not made such an argument.

[11] Counsel was discharged before the hearing and Mr. Geppert appeared at the hearing *pro se* with his father.

[12] In the interim between the denial on November 6, 2013, and the hearing, Mr. Geppert made at least one additional attempt to procure a learner's permit at the Westminster MVA office, but was unsuccessful.

[13] At the outset of the hearing, Mr. Geppert's father stated that he would be representing his son at the hearing. Consistent with SG §9-1607.1 and §10-206.1, the ALJ advised Mr. Geppert's father that, because he was not an attorney, he could not represent his son at the hearing. However, she swore in both father and son as witnesses and, in the

Included among the documents provided by the MVA was a letter that Mr. Geppert had submitted to the MVA from the Social Security Administration stating that the federal agency had no record that a social security number had been assigned to Mr. Geppert. The ALJ asked why Mr. Geppert lacked a social security number. His father replied that federal law did not require him to obtain one.

The ALJ then reviewed the Maryland Vehicle Law and observed that, under that law, one of the prerequisites for obtaining a Maryland driver's license was compliance with the SSN requirement. She opined that, because Mr. Geppert failed to satisfy the SSN requirement, the MVA was precluded from issuing him a license and that she had no discretion to order it to do otherwise.

Mr. Geppert's father then provided the ALJ with a copy of an MVA regulation that he had found in COMAR that described the SSN requirement differently from the statute, but consistently with the computer application form. The copy of the regulation provided by Mr. Geppert's father – denominated COMAR 11.17.12.02 – simply required that the applicant provide the applicant's social security number *or* certify that the applicant does not have a social security number.[14] As noted above, the use of the disjunctive "or" in that

_____

relatively informal context of the administrative hearing, interacted primarily with the father.

[14] That regulation read:

    A. The Administration shall request the social security number of each applicant for an original, renewed, duplicate, or corrected driver's license or identification document.

    B. An applicant for a driver's license shall disclose the applicant's social security number as required by 42 U.S.C. §666. If the

11

regulation appeared to indicate that a certification that an applicant simply does not have a social security number was a permissible alternative to providing the social security number on the application. This, of course, would be contrary to TR §16-103.1(11) and §16-106(c), in which the only alternative that an applicant has to providing a social security number is to demonstrate that the applicant is not eligible for one.

The ALJ immediately recognized the discrepancy between the statutes and the regulation provided by Mr. Geppert's father. The ALJ noted that "the language of the statute is stricter" than that of the regulation and stated that she was confronted with "two competing pieces of black letter law." After Mr. Geppert himself affirmed that the certification he had made on the computer at the MVA office was consistent with the regulation his father had presented, the ALJ opined that "if that's good enough for them … that's up to them." Observing that the regulation – and the computer certification – was "more liberal" than the statute, the ALJ said that she would follow the regulation and that it would be up to the MVA to ensure that its regulations and computer certifications were consistent with the Maryland Vehicle Law.

_____

applicant does not have a social security number, the applicant shall certify in the application that the applicant does not have a social security number.

C. The administration shall deny the issuance of a driver's license for failure to disclose the required social security number *or* to certify that the applicant does not have a social security number.

D. The disclosure of the social security number is voluntary for applicants for an identification document.

(emphasis added).

12

Apparently unbeknownst to the ALJ or Mr. Geppert's father, the MVA had repealed the regulation under discussion some years before Mr. Geppert's application.[15]  *See* 38:3 Md. Reg. 200 (Jan. 28, 2011) (Notice of Proposed Action of MVA to repeal COMAR 11.17.12.02); 38:9 Md. Reg. 553 (Apr. 22, 2011) (Notice of Final Action of MVA repealing COMAR 11.17.12.02).  The explanation of that action indicated that it was done "to reflect the current statute" following the periodic Regulatory Review and Evaluation Report of the relevant regulations.[16]

A different regulation, codified at COMAR 11.17.09.04A(5), had accurately reflected the SSN requirement, consistently with the statute, since 2009.[17]  That regulation stated, as it does today, that "an applicant for a Maryland license … shall provide … [a social security number] or proof of ineligibility for [a social security number]."  However, that regulation was not brought to the ALJ's attention.

---

[15] It is difficult to fault the ALJ or Mr. Geppert's father for their ignorance of that repeal.  According to the Internet archive known as the Wayback Machine (https://archive.org/web/), the extant compilation of Maryland regulations published by the Division of State Documents, a unit of the Office of the Secretary of State, in COMAR still reflected the repealed regulation for some years after the MVA rescinded it.  Moreover, reconstructing the historical text of COMAR regulations is a tedious and difficult exercise, as any Maryland law librarian will attest.  Even if the MVA itself was aware of the discrepancy, the ALJ did not have the benefit of a live MVA representative at the hearing.  Indeed, the MVA did not point out that this regulation had been repealed in 2011 until the case reached this Court.

[16] The Regulatory Review and Evaluation Act requires the periodic systematic review of agency regulations to ensure, among other things, that they "continue to be supported by statutory authority and judicial opinions."  SG §10-132(1)(i)2.

[17] *See* 36:14 Md. Reg. 995 (July 6, 2009) (Proposed Action to adopt COMAR 11.17.09); 36:22 Md. Reg. 1724 (Oct. 23, 2009) (Final Action to adopt COMAR 11.17.09).

13

In any event, for reasons that are not evident in the record, the Division of State Documents, the State agency responsible for publishing COMAR, had apparently continued to include the rescinded regulation in its print and online compilation of COMAR.[18] Likewise, the MVA's computer application form that was in effect at the time that Mr. Geppert applied for a learner's permit also apparently continued to reflect the rescinded regulation.[19]

Having decided that the regulation presented to her superseded the statute, the ALJ ruled in Mr. Geppert's favor and ordered the MVA to issue a learner's permit to him. The ALJ advised both Gepperts that the MVA might seek judicial review of her decision in a circuit court. Immediately after the ALJ issued her decision, Mr. Geppert sought to implement the ALJ's order later that day at an MVA office, but the MVA declined to issue a learner's permit or allow him to take the learner's permit exam because of his failure to satisfy the SSN requirement.

Apart from the reliance on a rescinded regulation contrary to an existing statute, there was another problem with the ALJ's order on its face. Even if one were to give the rescinded regulation precedence over the statute, surmounting the SSN requirement hurdle

---

[18] This appears to have continued until the MVA repealed, in early 2018, the entire chapter in which this regulation appeared. 45:1 Md. Reg. 37 (Jan. 5, 2018) (Proposed Action to repeal COMAR 11.17.12); 45:5 Md. Reg. 286 (Mar. 2, 2018) (Final Action to repeal COMAR 11.17.12).

[19] The computer application form was subsequently corrected to be consistent with the statute. A screen shot of the revised form submitted by the MVA in the Circuit Court in 2017 demonstrated that the form had been revised to require an applicant to certify "that I do not have *and* I am not eligible for a social security number." (emphasis added).

only entitled Mr. Geppert to take the learner's permit exam and take additional steps required for a learner's permit. It would not itself entitle him to a learner's permit, as the ALJ had ordered.[20] *See* COMAR 11.17.05.09.

Mr. Geppert apparently made no further effort to try to implement the ALJ's decision for nearly a year.[21] For reasons that are not evident in the record, the MVA did not pursue judicial review of the ALJ's decision in the meantime.

## C.    *The Judicial Enforcement Proceeding*

On March 27, 2015, almost a year after the ALJ's decision, Mr. Geppert filed a *pro se* enforcement action under the APA in the Circuit Court for Baltimore County against the MVA and various MVA officials asking that the court issue a writ of mandamus to compel the MVA to allow him to take the learner's permit exam "and issue him a learner's permit or driver's license (whichever is appropriate)." The MVA answered the complaint, contending that Mr. Geppert did not have a clear legal right to the relief that he sought and that, in any event, issuance of a learner's permit to him would violate State law.[22]

---

[20] Mr. Geppert has conceded that he needs to pass the exam before he would be entitled to a learner's permit.

[21] Mr. Geppert applied to the MVA in March 2015 to take the learner's permit exam, but was rebuffed again.

[22] This case was captioned in the Circuit Court and the Court of Special Appeals listing one of the MVA officials as the lead defendant, although that individual had long since departed that post and the defendants' counsel had filed an appropriate substitution of defendant under Maryland Rule 2-241(a)(5). Before us, the parties have listed the agency as the lead defendant in the caption and we have done the same, as all of the defendant officials were named only in their official capacities.

15

The Circuit Court held a brief hearing in October 2015 at which the MVA and Mr. Geppert, now represented by new counsel, jointly asked to set a briefing schedule to be followed by oral argument. The Circuit Court acceded to the request. After some delay and a temporary dismissal of the action for failure to prosecute,[23] the parties filed their respective memoranda during the second half of 2017 and the Circuit Court heard argument on December 17, 2017.

In a memorandum opinion dated April 5, 2018, the Circuit Court reasoned that, to be entitled to a writ of mandamus, Mr. Geppert was required to show a clear legal right to the relief he sought. The court found that TR §16.103.1(11) was "clear and unambiguous" in prohibiting the issuance of a license or learner's permit to an applicant who did not satisfy the SSN requirement. The court concluded that, as Mr. Geppert had not established that he had satisfied that requirement, he failed to meet the threshold for mandamus relief. It held that the ALJ's order that the MVA issue a learner's permit was contrary to the statute and denied the request for mandamus relief. Mr. Geppert subsequently filed a motion to alter or amend the judgment, which the court also denied.

## D.    *The Appeal*

Mr. Geppert appealed to the Court of Special Appeals. Shortly after the appeal was filed, the MVA asked the intermediate appellate court to dismiss the appeal or, in the alternative, to transfer it to this Court pursuant to Maryland Rule 8-132 on the ground that

---

[23] The complaint was dismissed for lack of prosecution at the end of 2016 pursuant Maryland Rule 2-507(c). The Circuit Court later struck that dismissal. Mr. Geppert thereafter obtained new counsel and the litigation proceeded.

16

the Court of Special Appeals lacked appellate jurisdiction over this type of case. On July 6, 2018, the Court of Special Appeals denied the motion without explanation in a brief order and the appeal proceeded in that court. In the brief it subsequently filed, the MVA reiterated its request that the appeal be transferred to this Court under Rule 8-132.

In an unreported decision, the Court of Special Appeals reversed the Circuit Court. *Geppert v. Chaffee*, 2019 WL 4233845 (Md. Ct. Spec. App. Sept. 6, 2019). The intermediate appellate court concluded that, regardless of the legal merits of the MVA's position, the ALJ's decision was a final administrative order that was binding on the MVA because the agency had not sought judicial review of the order. *Id*. at *5-6. Citing its prior decision in *Karabetis v. Mayor & City Council of Baltimore*, 72 Md. App. 407 (1987), the Court of Special Appeals reasoned that the ALJ's order should be treated as an "enrolled judgment" for purposes of *res judicata*. *Geppert, supra*, at *7.

The Court of Special Appeals, nevertheless, revised the relief provided by the ALJ's order and devoted the largest part of its opinion to explaining that revision. *Geppert*, 2019 WL 4233845 at *14-21. While the ALJ had ordered the MVA to issue a learner's permit, the intermediate appellate court held that Mr. Geppert was entitled only to take the exam for a learner's permit. The court noted that the ALJ may have been confused by the MVA's documentation and that Mr. Geppert himself was not trying to circumvent the exam requirement. Despite the literal language of the ALJ's order, the MVA would be required to issue Mr. Geppert a learner's permit under the Maryland Vehicle Law only if he passed the exam. The intermediate appellate court declined to say whether Mr. Geppert would be

17

entitled to either a provisional or full driver's license, should he apply for one in the future. *Id*. at \*1 n.1.

Lastly, the Court of Special Appeals explained its decision not to dismiss the appeal. The court concluded that the relevant statutes provided a route of appeal to the intermediate appellate court from a circuit court decision in an action under the APA to enforce an administrative order concerning a driver's license. The court distinguished actions to review an administrative order under the APA concerning a driver's license, which it agreed were not appealable to the Court of Special Appeals, from an enforcement action such as Mr. Geppert had brought. While the court did not explicitly address the MVA's request that it transfer the appeal to this Court under Rule 8-132, its reasoning implicitly supported a denial of that request.

The MVA filed a petition for a writ of *certiorari*, which we granted.

### III

### Route of Appeal

We begin where the Court of Special Appeals ended – whether this appeal should have been dismissed or directed to this Court in the first instance. As noted above, the MVA argues that Mr. Geppert should have sought a writ of *certiorari* from this Court rather than pursue an appeal of right in the Court of Special Appeals and that, accordingly, the intermediate appellate court should have either dismissed the appeal or transferred the case to us rather than decide the appeal itself.

In our view, dismissal of the appeal was not appropriate, but the case should have been transferred to this Court to be treated as a petition for a writ of *certiorari*.

18

Nevertheless, the detour through the Court of Special Appeals is of no consequence. The case is now in this Court, as we have found the substantive issue worthy of a grant of *certiorari* and, given that the decision of the intermediate appellate court is not entitled to deference in this context, it does not skew our assessment of the merits.[24] We discuss the question of the route of appeal for future guidance.

As outlined above, this appeal concerns a ruling in a contested case proceeding under the APA that arose under Title 16 of the Maryland Vehicle Law. The complaint was brought under SG §10-222.1 of the APA and sought an order of mandamus from the Circuit Court to enforce an administrative order resulting from that proceeding.

The APA ordinarily provides, in SG §10-223, a further right of appeal to the Court of Special Appeals for actions brought in a circuit court under the APA – which could be either an action to review an administrative decision (brought under SG §10-222) or an action to enforce an administrative decision (brought under SG §10-222.1). However, there is an exception to that general rule that pertains to this appeal. SG §10-223(a)(1) excludes from the jurisdiction of the Court of Special Appeals "a case that arises under Title 16 of the [Maryland Vehicle Law] unless a right of appeal to the Court of Special

---

[24] The MVA suggests that, because the Court of Special Appeals lacked jurisdiction to hear this appeal, we should dismiss the appeal – presumably after vacating the intermediate appellate court's decision. However, a more appropriate disposition, in a technical sense, would be to vacate that decision and remand the case to the Court of Special Appeals to take the alternative action originally sought by the MVA – a transfer of the appeal to this Court under Maryland Rule 8-132 to be considered as a petition for a writ of *certiorari*. However, we have already found the substantive issue raised in this appeal to meet the standard for granting a writ of *certiorari* and the only difference in such a boomerang remand to the Court of Special Appeals would be the reversal of the roles of petitioner and respondent before us.

19

Appeals is specifically provided." Title 16, of course, concerns the authorization to drive a motor vehicle in Maryland, including the issuance of Maryland driver's licenses.

There is no question that this case arises under Title 16 and regulations issued under Title 16, which are cited several times in the complaint and which were the basis of the administrative order that Mr. Geppert seeks to enforce. Thus, this case falls within the exception to the general rule allowing circuit court decisions under the APA to be appealed to the Court of Special Appeals.[25] Mr. Geppert does not cite any authority that allows for an appeal of this specific type of case to the Court of Special Appeals – the exception to the exception in SG §10-223(a)(1) – and we are aware of none.

Given that appellate jurisdiction in Maryland is defined by statute,[26] under the exclusion in SG §10-223(a)(1), there would be no further appellate review beyond the Circuit Court unless another statute provides for such review.[27] The General Assembly

---

[25] Now adopting the rationale of the Court of Special Appeals, Mr. Geppert argues that the exclusion in SG §10-223(a)(1) does not apply to his appeal because (1) the complaint in this case was based on common law mandamus and (2) the ALJ's order meant that "there were no remaining unresolved issues under Title 16." However, neither rationale holds up under scrutiny. First, as noted earlier, the complaint was explicitly brought under SG §10-222.1 of the APA – and appropriately so, as it sought to enforce an order from a proceeding conducted under the APA. Second, the decision of the ALJ is not a free-floating order untethered to any other law. It directed the MVA to issue a learner's permit to Mr. Geppert under Title 16 of the Maryland Vehicle Law. As that order was later re-interpreted by the Court of Special Appeals, Mr. Geppert seeks to compel the MVA only to allow him to take the learner's permit examination. But, as Mr. Geppert notes in his brief, this "non-discretionary function" that he is seeking to compel the MVA to carry out is based on TR §16-110.

[26] *Pack Shack, Inc. v. Howard County*, 371 Md. 243, 247 (2002) ("The right to appeal in this State is wholly statutory.").

[27] Indeed, that was the case prior to 1985, as the General Assembly had not provided for any appellate jurisdiction beyond a circuit court for cases under the Maryland Vehicle

20

*has* provided a route of appeal for cases arising under Title 16. In particular, CJ §12-305 provides for *certiorari* review by this Court of a final judgment in a circuit court "on appeal from an administrative decision under Title 16 of the Transportation Article." Mr. Geppert suggests that the reference to "appeal" in CJ §12-305 means that it applies only to actions to review an administrative decision brought under SG §10-222, but not to actions to enforce an administrative decision brought under SG §10-222.1. Given the exclusion in SG §10-223(a)(1), that argument, however, would leave a litigant without *any* route to appeal a circuit court decision in a case like this. In any event, we do not construe CJ §12-305 as narrowly as Mr. Geppert suggests.

Mr. Geppert's notice of appeal sought review in the Court of Special Appeals rather than a writ of *certiorari* from this Court. When a litigant seeking to appeal a circuit court decision directs its appeal to the wrong appellate court, but there is jurisdiction in another appellate court, Maryland Rule 8-132 provides a solution. The court in which the appeal has been incorrectly filed "shall not dismiss the appeal but shall instead transfer the action to the court apparently having jurisdiction." This Court frequently receives transfers from the Court of Special Appeals under this rule in cases for which CJ §12-305 specifies the

---

Law. That year, in response to a concern that statutory and constitutional questions arising from those cases should be resolved consistently, the Legislature enacted a route of appeal for such cases to this Court via a writ of *certiorari*. Chapter 364, Laws of Maryland 1985; *see MVA v. Lindsay*, 309 Md. 557, 560 (1987). The exclusion in SG §10-223(a)(1), and the assignment of appellate jurisdiction in such cases to the Court of Appeals, was later narrowed from the entire Maryland Vehicle Law to Title 16 alone. Chapter 59, Laws of Maryland 1993.

21

route of appeal. *E.g., Cane v. EZ Rentals,* 450 Md. 597, 609-10 & n.10 (2016); *Stachowski v. State,* 416 Md. 276, 280-81 (2010).

While this appeal has arrived in this Court by a somewhat unusual route, the substantive issue remains the same as if the case had come here via a transfer under Rule 8-132. Accordingly, we will proceed to address that issue.

## IV

## The Merits

This appeal raises the question whether, in an action under SG §10-222.1 of the APA to enforce a final administrative order, a circuit court is bound by the ALJ's decision to direct an agency to take an action that the Legislature has specifically directed the agency not to take because the agency did not first seek judicial review of the administrative decision under SG §10-222. Resolution of this question involves considerations of administrative law, finality, the concept of issue or claim preclusion, the nature of an enforcement action seeking an order of mandamus, and separation of powers.

### A. *Standard of Review*

In seeking enforcement of the ALJ's decision under SG §10-222.1, Mr. Geppert asked for a writ of mandamus. The authority to issue a writ of mandamus rests in the "sound discretion" of the court. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 708 (2000). It is available only when (1) the action sought to be compelled is a ministerial, non-discretionary duty of the defendant and (2) the plaintiff has a clear legal right to that action. *Baltimore County v. Baltimore County Fraternal Order of Police*, 439 Md. 547, 569-71 (2014).

At first glance, it appears almost trite to say that a circuit court has exercised "sound discretion" when it declines to order an administrative agency to violate the statute that the agency administers. In this case the proposed order would direct the MVA to allow one who does not qualify under TR §16-106(c) for a license to take the exam for a learner's permit and, if he should pass that exam, to violate the express prohibition of TR §16-103.1(11) by providing him with a learner's permit or license.

The failure of the MVA to seek judicial review of the final administrative decision, however, makes this a more complicated question. Is the ALJ's decision that the regulation (later revealed to have been repealed) trumps the statute entitled to preclusive effect in the enforcement proceeding? That is a legal question. When the court's action turns on a legal issue, even in a mandamus case, review is conducted without deference to the circuit court. *Hughes v. Moyer*, 452 Md. 77, 91 (2017). As has been often pointed out, a circuit court must exercise its discretion in accordance with correct legal standards. *Faulkner v. State*, 468 Md. 418, 460 (2020); *Wilson-X v. Department of Human Resources*, 403 Md. 667, 675 (2008). Accordingly, we will consider this question without deference to the legal conclusions of the Circuit Court or of the Court of Special Appeals.

**B.** *Whether a Legal Determination Made in the ALJ's Final Administrative Decision Is Binding in a Judicial Enforcement Action*

The MVA asserts that the ALJ's legal decision that a regulation could supersede the prohibition in TR §16-103.1(11) was flatly wrong. It argues that the Circuit Court should not be directed to order the agency to issue a learner's permit to Mr. Geppert, an action clearly contrary to the statute, or even to allow him to take the learner's permit exam.

For his part, Mr. Geppert argues that the Circuit Court had no choice but to issue a writ of mandamus on his behalf. Alluding to phrases used by the Court of Special Appeals in its opinions in this case and in *Karabetis v. Mayor and City Council*, 72 Md. App. 407 (1987), he asserts that the ALJ's decision was binding on the Circuit Court as a "final judgment" or "enrolled judgment" and that the MVA's position amounts to an "impermissible collateral attack" on such a judgment. Respondent's Brief at pp. 15-16. He relies on the concepts of *res judicata* and collateral estoppel – also known as claim and issue preclusion.[28]

1. Relation of the Administrative Decision to the Enforcement Action

*"Final Judgment" and "Enrolled Judgment"*

To be precise, the ALJ's decision is not a "judgment" in the usual sense. Although the ALJ's title includes the word "judge" and the transcript of the administrative hearing identifies the speaker as "the Court" when the ALJ speaks, the ALJ is not part of the judicial branch and her decision was not a court judgment. Rather, it was the final administrative decision of an executive branch agency. When she rendered her decision, the ALJ was acting as the MVA's final decision maker pursuant to the delegation by the MVA. If the MVA had not delegated its hearings and final decision making in this type of case to the Office of Administrative Hearings, the MVA Administrator (or other delegee) would have authored the final administrative decision.[29]

---

[28] *See, e.g.*, *Cosby v. Dep't of Human Resources*, 425 Md. 629, 639 (2012).

[29] The law does not require the MVA to delegate final decision making authority to an ALJ. SG §10-205(b) (agency may delegate to the Office of Administrative Hearings authority to render proposed or final decisions and orders). Not all agencies do so. Even

24

A final agency decision – whether issued by an ALJ or an executive branch official – is "final" administratively the day it is issued. *See* SG §10-221 (final decisions under the APA). It does not matter whether or not a party has sought judicial review of that decision under SG §10-222 or judicial enforcement of that decision under SG §10-222.1. The concept of an "enrolled judgment," which does not appear in the APA, appears to refer to the process that a court clerk undertakes in entering and indexing a judgment of a court.[30]

It is true that neither party to the administrative proceeding here filed an action for judicial review of the ALJ's decision pursuant to SG §10-222.[31] The reference to the ALJ's decision as a "final judgment" or "enrolled judgment" by the intermediate appellate court appears to be an effort to incorporate the idea that the decision was not reviewed by a court under that statute.

---

if an agency delegates authority for an ALJ to render a proposed decision, it may retain authority to consider exceptions to that decision, accept or reject the ALJ's proposed decision, and render the final administrative decision itself. *See* SG §§10-220, 10-221; *see also, e.g.,* COMAR 02.02.06.07 (delegation of authority to the Office of Administrative Hearings to conduct hearings under the Maryland Securities Act); *Maryland Securities Commissioner v. U.S. Securities Corp.*, 122 Md. App. 574, 581 (1998) (proposed decision by ALJ adopted in part and modified in part in final administrative decision issued by agency).

[30] *See Hagler v. Bennett*, 367 Md. 556, 557, 563 (2002) (referring to a civil judgment entered and recorded in a circuit court as an "enrolled judgment"); *Livingston v. Naylor*, 173 Md. App. 488, 492 (2007) (referring to the filing of an out-of-state judgment in circuit court under the Uniform Enforcement of Foreign Judgments Act as enrolling the judgment).

[31] It was not only the MVA that disagreed with the ALJ's decision. In this appeal, Mr. Geppert has disagreed with the ALJ's conclusion that he failed to satisfy the statutory SSN requirement, arguing that he was not eligible for a social security number. *See* footnote 39 below.

25

*"Collateral Attack"*

It does not seem quite accurate to refer to an enforcement proceeding under SG §10-222.1 as "collateral" to the administrative proceeding that resulted in the administrative decision that the plaintiff seeks to enforce. A brief review of the history of that provision, a relatively recent addition to the APA, is informative.

The enforcement action created in SG §10-222.1 was added to the APA in 2000. Chapter 377, Laws of Maryland 2000. According to materials in the legislative bill file, it appears to have been the brainchild of attorneys for AFSCME, a public employee union, in late 1999. Letter of Keith J. Zimmerman to Sue Esty, AFSCME Council 92 (November 24, 1999). At the next session of the Legislature, House Bill 439 (2000), incorporating that suggestion, was introduced. Every witness who testified about the bill in both houses of the Legislature – all of them in favor of the bill – was affiliated with AFSCME.

In a letter to the chair of the Senate Judicial Proceedings Committee, the union's attorney explained that the provision was intended to provide an "enforcement mechanism equivalent to that found in [Federal Rule of Appellate Procedure] 15," which provides for *both* review and enforcement of administrative decisions.[32] Letter of Keith J. Zimmerman to Senator Walter M. Baker re House Bill 439 (March 27, 2000). The addition of SG §10-

---

[32] Judicial review of administrative decisions is the subject of a Federal Rule of Appellate Procedure because, under federal law, an action for judicial review of a federal agency decision usually begins in a federal court of appeals. A. Rochvarg, Principles and Practice of Maryland Administrative Law (2011) at 159.

26

222.1, in conjunction with the existing provision concerning judicial review (SG §10-222), would fill the perceived gap in the State APA.[33] *Id.*

Interestingly, Federal Rule of Appellate Procedure 15 does not presume that judicial review of an administrative decision necessarily precedes an action to enforce that decision and explicitly contemplates both review and enforcement as part of the same proceeding. Perhaps for similar reasons, SG §10-222.1 does not require judicial review, or even an opportunity for judicial review, as a prerequisite to an enforcement action.[34] In any event, the statute itself does not address the extent to which the circuit court in an enforcement action is bound by the administrative decision. Case law relating to the common law concept of issue preclusion is informative.

*Binding Effect of Administrative Fact Finding and Legal Determinations*

Even if one conceives of a judicial enforcement proceeding as "collateral" to the administrative decision that it seeks to enforce, the preclusive effect of the administrative

---

[33] The Maryland APA had been based on the Model State Administrative Procedure Act. *See* A. Rochvarg, *supra*, at 6. Although not specifically mentioned in the legislative bill file for House Bill 439, by the time of the 2000 amendment of the Maryland APA, the Model Act had been revised to specifically include a judicial enforcement provision like SG §10-222.1. *See* 15 Uniform Laws Annotated (2001 & 2020 Supp.), Model State Administrative Procedure Act (1981), §5-201 *et seq*. It was contemplated that a court in such a proceeding could consider the legality of the administrative order that was sought to be enforced. *Id*., §5-203(1).

[34] As originally introduced, the 2000 bill would have delayed any enforcement action until after any judicial review proceeding or the expiration of the deadline for seeking judicial review. That limitation was eliminated from the bill as it passed through the General Assembly.

proceeding relates more to fact findings than to the legal determinations of the administrative decision maker.

Issue preclusion is a well-established common law doctrine that bars parties from relitigating an issue that was necessarily decided in a prior adjudication by a final judgment on the merits after the parties had an opportunity to fully litigate the issue. *Garrity v. Maryland State Bd. of Plumbing*, 447 Md. 359, 368-69 (2016). A final decision of an administrative agency can have a preclusive effect when (1) the agency decision is based on a quasi-judicial process; (2) the issue presented to the fact finder in the second proceeding was fully litigated before the agency in the first proceeding; and (3) the resolution of that issue was necessary to the disposition of the first proceeding. *Garrity,* 447 Md. at 380.[35] If those conditions are met, the agency's "findings" in the first proceeding are given preclusive effect. *Id.* In discussing the concept of issue preclusion, federal case law can be persuasive authority. *See id.* at 368-80 (extended discussion of two Supreme Court decisions).

When this Court has discussed issue preclusion based on a prior administrative proceeding, it has focused on the *facts* determined as part of that proceeding. For example,

---

[35] At one time, the doctrine of issue preclusion was not applied to decisions of administrative agencies. Eventually it was extended to administrative proceedings that are "the essential equivalent of a judicial proceeding." *Sugarloaf Citizens Ass'n v. Northeast Maryland Waste Disposal Auth.*, 323 Md. 641, 658 n.13 (1991) (quotation marks and citations omitted); *see also White v. Prince George's County*, 282 Md. 641, 658 (1978). However, the doctrine does not apply to decisions resulting from less formal administrative proceedings. *See Maryland Dep't of Educ. v. Shoop*, 119 Md. App. 181 (1998) (declining to accord preclusive effect to administrative proceeding conducted without a judicial officer, rules of evidence, and traditional trial procedures).

in *Garrity*, this Court held that the findings of the Consumer Protection Division regarding a plumbing company's unfair and deceptive trade practices were entitled to preclusive effect in a subsequent proceeding before the Board of Plumbing. The Court repeatedly referred to the agency's role as the adjudicator of fact in defining the scope of the holding. *See Garrity,* 447 Md. at 380; *see also Batson v. Shiflett*, 325 Md. 684, 701-07 (1992) (discussing whether fact findings made in a prior federal administrative proceeding had a preclusive effect on a factual determination to be made by a jury in state court civil case); *Murray Int'l Freight Corp. v. Graham*, 315 Md. 543, 545 (1989) (discussing whether issue preclusion barred relitigation of "fact-finding" conducted by the Workers' Compensation Commission).

It is notable that, in the only reported appellate decision under SG §10-222.1, the Court of Special Appeals held that an ALJ's findings in a final administrative decision applying a personnel law were binding in the enforcement action. *Department of Health & Mental Hygiene v. Rynarzewski*, 164 Md. App. 252, 255-57 (2005) (listing findings of fact that resulted in ALJ's conclusion that agency lacked basis for terminating employee). That decision did not suggest that a circuit court in an enforcement action under SG §10-222.1 would be bound by an ALJ's legal analysis of the governing statute.

Federal courts have also emphasized the fact finding nature of an administrative proceeding in according it preclusive effect, but do not accord the same binding effect to an agency's legal conclusions.[36] This distinction between the preclusive effect given to

---

[36] In the leading case of *University of Tennessee v. Elliott*, 478 U.S. 788 (1986), the Supreme Court discussed the preclusive effect of a state administrative proceeding on a related federal judicial proceeding. In that discussion, the Court referred repeatedly to the

fact findings and legal conclusions makes sense. As this Court has noted, "[t]he principal characteristic of a quasi-judicial proceeding is that of fact-finding by the undertaking body, even if the relevant facts are undisputed." *Maryland Overpak Corp. v. Mayor and City Council of Baltimore*, 395 Md. 16, 37 (2006). While an administrative adjudicator may offer an opinion on legal issues as part of its final order (and sometimes may even be required to address such arguments), that does not mean that a court is precluded from re-examining that same legal issue in a related proceeding. Thus, the case law on issue preclusion draws a distinction between administrative fact finding and administrative legal determinations for purposes of finality.

To the extent that the *Karabetis* case,[37] on which the Court of Special Appeals relied, could be read to lead to a different conclusion, we disagree with that decision, at least in the context of an enforcement action under SG §10-222.1. In *Karabetis*, a municipal

---

"administrative factfinding" function and recognized a policy of applying "principles of issue preclusion to the *factfinding* of administrative bodies acting in a judicial capacity." 478 U.S. at 797 (emphasis added); *see also Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 484 n.26 (1982) (noting that "so long as opposing parties had an adequate opportunity to litigate disputed *issues of fact*, res judicata is properly applied") (emphasis added).

An agency's legal analysis is less likely to have a preclusive effect. *See Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 192-93 (3d Cir. 1993) (unreviewed agency legal determination that plaintiff's statement was not protected by First Amendment not given preclusive effect); *Peery v. Brakke*, 826 F.2d 740, 746 (8th Cir. 1987) (unreviewed state agency decision that plaintiff did not have due process right to a pre-termination hearing not accorded preclusive effect); *Romano v. SLS Residential, Inc.*, 812 F.Supp.2d 282, 290-91 (S.D.N.Y. 2011) (state administrative agency fact findings concerning restraints in mental health facility would be given preclusive effect, but not agency's legal conclusions based on those findings); *Perley v. Palmer*, 157 F.R.D. 452, 457 (N.D. Iowa 1994) (state agency's conclusions on disputed issues of law related to Medicaid benefits not given preclusive effect).

[37] *Karabetis v. Mayor and City Council of Baltimore*, 72 Md. App. 407 (1987).

commission brought an administrative proceeding against a bakery under a local wage and hour law for overtime violations. The commission found that the bakery, which only briefly appeared in the proceeding, had violated the ordinance and issued an order requiring the bakery to pay specific amounts in restitution and civil penalties. The bakery did not seek judicial review of that determination. The city later brought an action against the bakery to enforce the commission's order and the bakery attempted to defend by challenging the validity of the order on various grounds.

The Court of Special Appeals held that the bakery was precluded from raising its defenses, including an argument that the commission's jurisdiction was preempted by federal law. It reasoned that the commission's decision had become a "final judgment" that was "enrolled" by virtue of the bakery's failure to seek judicial review of that decision. 72 Md. App. at 414-18, 423.[38] The court stated that principles of finality can make a final administrative decision binding on questions of law. However, despite that holding, the court proceeded to analyze the bakery's legal preemption argument in some detail, as well as the evidence that the bakery presented in the circuit court to support the preemption defense. In the end, it rejected that defense.

An enforcement action under SG §10-222.1 is not an occasion for the losing party in an administrative proceeding to challenge the fact findings of an ALJ that underlie the final administrative decision. However, the prevailing party must still establish a "clear *legal* right" to the relief sought in order to obtain a writ of mandamus in aid of enforcement.

---

[38] In *Karabetis*, the court applied the doctrine of claim preclusion, the closely related cousin of issue preclusion.

31

2.     Application to the ALJ's Decision

In considering Mr. Geppert's argument that we should give binding effect to the ALJ's decision in this case, three aspects of the administrative decision are notable:

First, in his enforcement action, Mr. Geppert does not rely on any fact findings of the ALJ. Indeed, the only actual fact findings that the ALJ could be said to have made were (1) that Mr. Geppert had not made a false certification on his application – which was not the reason that the MVA had rejected his license application and (2) that Mr. Geppert did not have a social security number and had not shown he was ineligible for one – *i.e.*, that he had *failed* to satisfy the *statutory* SSN requirement – which is not a finding on which Mr. Geppert wishes to rely.[39]

Second, the ALJ's order is based on a legal conclusion that a purportedly current regulation (later determined to have been repealed) that is inconsistent with the governing statute somehow trumps the statute – a legal conclusion that indisputably violates a basic principle of administrative law.[40] The fact that the MVA's computer application form also

---

[39] In fact, on appeal Mr. Geppert has advanced an argument somewhat at odds with his contention that the ALJ's determinations are binding in this proceeding. In particular, Mr. Geppert argues that, contrary to the conclusion drawn by the ALJ, he in fact satisfies the statutory requirement that he prove ineligibility for a social security number. He asserts that he was "not eligible for a Social Security number" – and therefore both satisfied TR §16-106(c)(2) and was not disqualified under TR §16-103.1(11)(ii) – because he has never applied for a social security number. Mr. Geppert did not make this argument to the ALJ. The Court of Special Appeals, which specifically noted that Mr. Geppert *is* eligible to obtain a social security number, *Geppert*, 2019 WL 4233845 at *1, apparently found no merit in this reasoning. Neither do we. To say one is not eligible for something simply because one has not applied for it is like celebrating one's team as undefeated for a season in which it has not played any games.

[40] "[I]t is axiomatic that an administrative regulation must be consistent with the letter and policy of the statute under which the administrative agency acts." *Insurance*

32

appeared to be inconsistent with the statute would not detract from the relative weight to be given to the statute.  *See Sugarloaf Citizens Ass'n v. Northeast Maryland Waste Disposal Auth.*, 323 Md. 641, 663 n.2 (1991) ("an administrative practice is entitled to no weight where it is inconsistent with the statutory scheme").  A poorly worded form cannot override the clearly-stated intent of the Legislature.

In the end, the ALJ came to a fork in the road at which the statute pointed in one direction and the (repealed) regulation pointed in the opposite direction.  She took the road less traveled.  Perhaps it was out of understandable exasperation with the agency and what she perceived to be its inconsistent regulations.  But that legal determination was wrong and led her to disregard her determination that Mr. Geppert had failed to satisfy the statutory SSN requirement.

Third, the ALJ's order based on the final administrative decision required the MVA to issue a learner's permit to Mr. Geppert.  The Court of Special Appeals' decision, while holding that the ALJ's decision must be enforced, does not grant the relief that the ALJ ordered.  Rather, it held that Mr. Geppert must first comply with certain conditions required by Title 16 for obtaining a permit – passage of the learner's permit exam and presumably the vision test.  *See* TR §16-110.  (Even Mr. Geppert appears to concede that he is not entitled to issuance of a learner's permit without compliance with those conditions).  This sensible conclusion on the part of the intermediate appellate court demonstrates that a court called upon to enforce an administrative decision does not act with blinders on.  Judicial

---

*Commissioner v. Bankers Independent Ins. Co*., 326 Md. 617, 623 (1992); *see also Christ v. Maryland Dep't of Nat. Res.*, 335 Md. 427, 437 (1994).

enforcement of an administrative order inevitably incorporates some consideration of the law on which the order is based. Here, the SSN requirement in TR §16-106(c) is also a condition, like the learner's permit exam and vision test, established by Title 16 as a statutory prerequisite to a learner's permit. And there is also a second statute – TR §16-103.1(11) – that explicitly bars the MVA from issuing a license when the SSN requirement is not met.

Binding a court to a clearly incorrect legal determination of an ALJ on behalf of an executive branch agency could have serious consequences. Mr. Geppert's position would appear to allow an executive branch agency to stake out a position contrary to that which the Legislature has clearly expressed in statute and insulate it from correction by the judicial branch. For example, an administrator of an agency could adopt a regulation inconsistent with the pertinent statute enacted by the General Assembly, retain final decision making authority, and uphold the validity of that regulation in a final administrative decision. If the agency's enforcement arm did not seek judicial review of that final agency decision, under Mr. Geppert's theory, that erroneous legal position would be automatically binding on the judicial branch. Such a result undermines the separation of powers and system of checks and balances of the State Constitution. *See* Maryland Declaration of Rights, Article 8;[41] *cf. PDR Network, LLC v. Carlton & Harris*

_____

[41] The Court of Special Appeals suggested that its decision directing the Circuit Court to order the MVA to take action contrary to a State statute would not have a significant impact because the regulation on which the ALJ's decision was based had been repealed. *Geppert*, 2019 WL 4233845 at *12 n.8. Even though the regulation had been repealed (in fact, before Mr. Geppert applied for a learner's permit) and even though the intermediate appellate court's decision was unreported and therefore not precedent for purposes of *stare decisis*, *see* Maryland Rule 1-204(a), there remains some potential for

34

*Chiropractic, Inc.,* 139 S.Ct. 2051, 2057 (2019) (Thomas, J., concurring) (a law that required a federal court in an enforcement action to be bound by an agency order interpreting the statute on which the enforcement action was based would be unconstitutional).

In our view, the failure of the MVA to pursue judicial review of the ALJ's erroneous legal determination did not tie the hands of the Circuit Court when it was asked to enforce that legal determination in an order based on the ALJ's decision.

## C.     *Summary*

What began as one teenager's effort to get a driver's license, coupled with what appears to be a principled opposition to social security numbers, has been transformed into litigation that raises important and complex issues – but unnecessarily so. To be sure, it would have been vastly preferable for the MVA simply to have sought reversal of the ALJ's decision through a judicial review action under SG §10-222. Had it done so, a reviewing court would no doubt have come to the unremarkable conclusion that the ALJ's decision was legally unsustainable. And the matter likely would have ended there, as the issue whether an applicant must satisfy the SSN requirement in that context would not have merited further discretionary review under the standards governing *certiorari*.

From the outset, this case has been dogged by mishaps and missteps seldom seen together in one case – reliance on a rescinded regulation that had inexplicably remained on

---

application of the ALJ's decision in other cases under the concept of non-mutual collateral estoppel, a doctrine distinct from the general rule of *stare decisis*. *See Garrity*, 447 Md. at 369-70. While we do not know if that would come to pass, neither can we completely discount the possibility.

35

the books (and in official cyberspace) for years after it was rescinded, a computer application that deviated from the law by using the conjunction "or" rather than "and" at a critical juncture, an agency's failure to seek judicial review of an adverse administrative decision, an enforcement action that seeks a writ of mandamus to order an agency to do something that the Legislature has expressly forbidden, the temporary dismissal of that enforcement action for failure to prosecute, and the diversion of the appeal of that action to the intermediate appellate court in a rare instance where that court lacked appellate jurisdiction.

However, two things have remained true throughout:

(1) A statute (TR §16-106(c)), consistent with federal law, requires that an applicant for a Maryland driver's license satisfy the SSN requirement and another statute (TR §16-103.1(11)) explicitly prohibits the MVA from giving a license to an applicant who does not do so.

(2) Mr. Geppert does not have a social security number even though he is eligible for one, and therefore has not satisfied the statutory SSN requirement – as the ALJ herself found.

Taken together, that means that Mr. Geppert does not have a clear legal right to the relief that he has sought in this action. Neither the executive branch, in the guise of either the MVA or the ALJ who acted as the MVA's final decision maker, nor the judicial branch

in an enforcement action, has authority to override the legislative determination that decides this case.[42]

Mr. Geppert may not agree with the Legislature's decision to require a social security number as a prerequisite to a driver's license. One can certainly debate the wisdom of the SSN requirement, which relates more to immigration enforcement and child support enforcement, than to driver capability or highway safety. But that debate belongs in the State House rather than an MVA branch office, as it is ultimately the General Assembly that resolves the policy issues in the statute that governs the right to operate a motor vehicle in Maryland.

## V

## Conclusion

For the reasons explained above, we hold:

(1) A party who seeks to appeal a circuit court decision in an enforcement action under SG §10-222.1 that arises under Title 16 of the Maryland Vehicle Law should file a petition for *certiorari* with this Court pursuant to CJ §12-305. If such an appeal is

---

[42] In an argument made for the first time in this Court, Mr. Geppert contends that he has a property right in a driver's license and that the Circuit Court's decision that the SSN requirement in the Maryland Vehicle Law prevails over the more lenient repealed regulation violates his right to due process. Under Maryland Rule 8-131(a), an appellate court ordinarily will not decide an issue that was neither raised nor decided in the trial court. In any event, there is no fundamental "right to drive," as Mr. Geppert suggests. *MVA v. Seenath*, 448 Md. 145, 183 (2016). Moreover, this Court has previously held that the MVA's denial of a license when required to do so by TR §16-103.1 accords with due process. *Alavez v. MVA*, 402 Md. 727, 737-39 (2008).

incorrectly filed in the Court of Special Appeals, it should be transferred to this Court pursuant to Maryland Rule 8-132 to be treated as a petition for a writ of *certiorari*.

(2) The Circuit Court did not err in declining to afford binding effect to the ALJ's erroneous legal conclusion that a regulation (later determined to be repealed) superseded the statutory SSN requirement. The Circuit Court properly rejected Mr. Geppert's request for a writ of mandamus to enforce the ALJ's decision because he did not have a clear legal right to the relief granted by the ALJ's order.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. COSTS TO BE PAID BY RESPONDENT.**